CITY OF CORPUS CHRISTI V. A. W. GREGG, ET AL.

No. A-5191. Decided March 28, 1956.
Rehearing overruled May 16, 1956.
(289 S.W. 2d Series 746)

538

*I. M. Singer*, City Attorney, *Keys, Russell, Keys & Watson and James C. Watson*, all of Corpus Christi, for petitioner, City of Corpus Christi.

The Court of Civil Appeals erred in not rendering judgment for the city, since the evidence showed that there had been no advertisement regarding said leases as the statute required,

·and in refusing to hold that the trial court was in error in sustaining a motion for an instructed verdict. Culver v. Miears, 220 S.W. 2d 200, error refused; Vittitoe v. Junkin, 54 S.W. 2d 166, error dismissed; Jernigan v. Wainer, 12 Texas 189.

*B. D. Tarlton, Lewright, Dyer, Sorrell & Redford,* of Corpus Christi, *C. E. Bryson,* of Houston, *John Miller, J. C. Ternus* and *W. B. Moss,* of Sinton, *Wm. E. Nicholas,* of Aransas Pass, *Dan Moody, Jr.,* and *Dan Moody,* of Austin, for respondent A. W. Gregg.

The Court of Civil Appeals erred in overruling the motion of appellees, Gregg et al, to affirm on certificate the judgment of the trial court, and in reversing the judgment of the trial court. Jarrell v. Farmers' & Merchants State Bond Bank, 128 Texas 332, 99 S.W. 2d 281; Klattenhoff v. Schriever, 131 Texas 223, 113 S.W. 2d 515; Heywood-Wakefield Co. v. Brady, 128 Texas 371, 101 S.W. 2d 224.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Our former opinion rendered on October 5, 1955, and the judgment entered thereon is withdrawn. At the time we wrote that opinion we were of the belief that this was a case wherein no motion for new trial was required to be filed by the City. That was the basis of the presentation and the arguments made in this Court and also as set out in the opinion of the Court of Civil Appeals denying respondents' motion to affirm the case on certificate as provided in Rule 387, Texas Rules of Civil Procedure. 267 S.W. 2d 478.

In its motion for rehearing the City points out that a motion for new trial was required to be filed by it in order to complain of the action of the trial court in overruling its motion for continuance and of other rulings of the trial court made prior to the actual trial of the cause upon its merits. This being a case in which an instructed verdict against the City was given, Rule 324, Texas Rules of Civil Procedure, states no motion for new trial is necessary as a prerequisite to an appeal. However, Rule 325, Texas Rules of Civil Procedure, provides:

"In cases of motions for continuance, or for change of venue, or other preliminary motions made and filed in the progress of the cause, the rulings of the court thereon shall be considered as acquiesced in, unless complained of in the motion for new trial; and the judge may recite in his order disposing of the

motion for new trial the grounds of such ruling. *Nothing in Rule 324 shall render a motion for new trial unnecessary in the instances mentioned in this Rule nor in instances of newly discovered evidence, misconduct, fraud or the like.*" (Emphasis added).

■ The City has complained of the trial court's action in overruling the City's motion for continuance, etc. in its motion for new trial, in the Court of Civil Appeals, and in its application for writ of error and in its briefs filed in this Court. Rule 374, Texas Rules of Civil Procedure, provides in part as follows:

"The motion for new trial, when required to be filed under these rules, shall constitute the assignments of error on appeal or writ of error. A ground of error not distinctly set forth in the motion for new trial, in cases where a motion for new trial is rquired shall be considered as waived. * * *"

Therefore the City, to complain of these actions of the trial court, was required to file a motion for new trial.

Rule 386, Texas Rules of Civil Procedure, provides that "* * * the appellant shall file the transcript and statement of facts with the clerk of the Court of Civil Appeals within sixty days from the rendition of the final judgment or order overruling motion for new trial * * *." The record shows that the motion for new trial, the amended motion for new trial, and the order of the trial court overruling the motion for new trial were all made within the proper time limits as prescribed by the applicable Rules of Civil Procedure effective at that time.

It is claimed that the City perfected its appeal as of the date of the rendition of judgment by giving notice of appeal. An appeal bond is not required as a prerequisite to appeal by a city. It is true that the City did perfect its appeal at the time it excepted to the judgment and gave notice of appeal in open court at the time of the rendition of the judgment. A litigant required to file an appeal bond would likewise perfect his appeal by filing such bond. Rule 306c, Texas Rules of Civil Procedure, specifically takes care of such a situation. That Rule provides: "No motion for new trial or appeal bond * * * shall be held ineffective because prematurely filed, * * * and every such appeal bond * * * shall be deemed to have been filed on the date of * * * the overuling of the motion for new trial, if such a motion is filed." We think the same reasoning applies here and that where a motion for new trial is required to be filed,

and is filed, the appeal is perfected at the time of the order overruling the motion for new trial, instead of when first given at the rendition of the judgment. The City of Corpus Christi was required to file a motion for new trial and since it did file such motion the record was timely filed in the Court of Civil Appeals within the sixty days after the order overruling the motion, as is required by Rule 386 above quoted. This being true the motion to affirm on certificate is denied and the judgment of the Court of Civil Appeals on this point is affirmed.

This is a suit filed by Gregg against the City of Corpus Christi to validate the four oil and gas leases hereinafter discussed, and in which suit the City, by cross-action, seeks to cancel these four oil and gas leases now held by Gregg on land owned by the City of Corpus Christi on the dates of each respective lease. The ground of cancellation were bribery of City officials by Gregg; fraud and conspiracy on the part of Gregg in procuring the lease; failure to comply with the provisions of Art. 5400a, Vernon's Annotated Civil Statutes, and certain charter provisions relative to the giving of notice of intention to receive bids; interest on the part of the mayor in said leases at the time the bids were acted on and Gregg's bids were accepted; arbitrary action on the part of the City Council; and gross inadequacy of the bids. At the end of the testimony of all parties, the trial court instructed a verdict against the City and in favor of Gregg. The action of the trial court, save as to the application of Art. 5400a, was affirmed by the Court of Civil Appeals. In application for writ of error the City complains of the action of the Court of Civil Appeals in its holding on the questions of fraud and conspiracy and interest of the mayor in the leases. There is no evidence of the mayor's interest in the leases save and except as connected with the alleged fraud and conspiracy allegations.

In disposing of the case on its merits, the Court of Civil Appeals held that the evidence introduced was insufficient, as a matter of law, to make any issue to go to the jury on the City's allegations of fraud and conspiracy in connection with the awarding of the leases to petitioner, Gregg, which is a holding of no pecuniary interest of the mayor in such leases. 275 S.W. 2d 547. The City complains of such holding by the Court of Civil Appeals. We have carefully examined the record in this case and agree with the holding of the Court of Civil Appeals on this point. To set out the evidence in detail would unduly lengthen this opinion. The Court of Civil Appeals gives a fair and clear summary of the evidence on this issue. We are

of the opinion that the facts of this case show, as a matter of law, that the City is estopped to set aside the leases made to Gregg. Therefore the trial court correctly instructed a verdict for Gregg at the end of the introduction of evidence by all parties. The Court of Civil Appeals reversed and remanded the cause because the trial court struck from the City's pleadings all reference to Art. 5400a, Vernon's Annotated Civil Statutes.

■ In making the leases upon which suit was brought the City acted in its proprietary capacity and not in its governmental capacity; therefore, it is subject to the legal principles of estoppel. City of San Angelo v. Deutsch, 126 Texas 532, 91 S.W. 2d 308, (6) ; Moore v. City of Beaumont, Texas Civ. App., 195 S.W. 2d 968, 991, affirmed 146 Texas 46, 202 S.W. 2d 448; Cawthorn v. City of Houston, 1921, Texas Com. App., 231 S.W. 701; City of Port Arthur v. Young, 1931, Texas Civ. App., 37 S.W. 2d 385, wr. ref.; McKenzie Const. Co. v. City of San Antonio, 1932, Texas Civ. App., 50 S.W. 2d 348; wr. ref.; City of Corpus Christi v. Johnson, 1932, Texas Civ. App., 54 S.W. 2d 865, no writ history; Panhandle Const. Co. v. City of Spearman, 1935, Texas Civ. App., 89 S.W. 2d 1053, no writ history. It has been said that ratification of an invalid municipal contract, estoppel to deny its validity, and municipal liability on implied contract, or where the express contract is invalid are so confused and jumbled together in the decisions that the precise ground of relief as allowed or disallowed is uncertain and sometimes incapable of ascertainment. McQuillen, "Municipal Corporations," 3rd Ed., Vol. 10, p. 415. For this reason McQuillen treats all of the above principles of law together. It has been said that "doctrine of estoppel is predicated upon common honesty and municipalities as well as individuals are affected by it." *Idem*, p. 416.

In 31 C.J.S. 360, Sec. 111-b, we find the law stated thus:

"Under the general rules discussed * * * where the act or contract of a municipal or quasi-municipal corporation is not one which it is without corporate power to make but is unenforceable merely because of an irregular exercise of power in making or execution of it, the corporation may be estopped to deny the validity of the act or contract where it has accepted the benefits thereof. * * *" See also *Idem*, subsection c. p. 361.

In McQuillen, "Municipal Corporations," 3rd Ed., Vol. 10, p. 420, Section 29.104, it is stated:

"It is a general rule that whatever acts public officials may

do or authorize to be done in the first instance may subsequently be adopted or ratified by them with the same effect as though properly done under previous authority. Consequently, it is well settled that contracts which are within the scope of the corporate powers but not authorized by proper action of the municipal corporation, that is, contract not ultra vires, may be ratified by the proper corporate authorities. If the power is clearly vested but is irregularly or defectively exercised by the municipality and its officers and agents, the case presents a defective execution of the power only, and thus affords a basis for the application of the doctrine of equitable estoppel. * * *"

In the case of City of Beaumont v. Moore, 146 Texas 46, 202 S.W. 2d 448, wherein the City, by ordinance, had sold and conveyed by warranty deed to Moore certain royalty interest under the municipal airport, the City, being a Home Rule city, acting under its general powers and charter powers, the claim was made that such sale by the City was wholly void and could confer no rights upon the purchaser. This Court rejected such contention and approved the holding of the Court of Civil Appeals that the conveyance by the City was not void.

In the case of City of San Angelo v. Deutsch, 126 Texas 532, 91 S.W. 2d 308 (6), this Court made a thorough discussion of the applicability of estoppel to municipal corporations and states that where the action taken or contract made is not ultra vires, but is within the power of a city to make, and where the city has accepted and retained the benefits arising from the contract, and stood by and permitted the other party to spend his funds under the contract, the city is estopped to deny that a contract existed. There is also a discussion of the legal principles involved in applying estoppel to the acts of officials and a governing body of a city in the case of Cawthorn v. City of Houston, supra.

In the case of Gallup v. Liberty County, 1909, 57 Texas Civ. App. 175, 122 S.W. 291, wr. den., Liberty County sought to recover its school lands sold by the County Judge of Liberty County who received a commission out of the sale price. The Commissioners' Court had passed a motion authorizing the Judge to sell the school lands on terms and conditions as to him seemed best. The Judge made a sale of the lands, the sale was reported to the Commissioner's Court, and the proceeds deposited in the banks as directed by the Court. Through later orders and changes the proceeds were invested in deficiency warrants issued by Liberty County. Some 25 years after the sale Liberty

County brought a suit to recover its school lands on the ground that the Constitution permitted the County to sell its school lands only upon terms fixed by the Commissioners' Court. Also, it was alleged that the sale through the County Judge at his discretion was wholly invalid and therefore void. Judgment was rendered by the trial court for the County. On appeal, this judgment was reversed and rendered for those claiming under the original purchasers upon the ground that by retaining the benefits of the contract and not objecting to the sale, the County had ratified the sale. In answer to the contention of the County that the sale was absolutely void, and could not be ratified, the Court said that it was within the corporate powers of Liberty County to sell its school lands by virtue of the Constitution and statutes; that the invalidity of the sale did not rest upon the principle of ultra vires," * * * but *that the vice lay in the manner in which the county exercised its corporate power to sell* * * *." (Emphasis ours.) Although the denial of the writ of error was prior to 1927, and does not have the effect of a refusal under the present rules, the Gallup case has been cited with approval in the following cases: Williams v. Pure Oil Co., 124 Texas 341, 78 S.W. 2d 929, 931; Slaughter Cattle Co. v. Potter County, Texas Civ. App., 235 S.W. 295; Affirmed Texas Com. App., 254 S.W. 775; Carter-Kelly Lumber Co. v. Angelina County, 59 Texas Civ. App. 310, 126 S.W. 293, wr. ref.; Brazoria County v. Padgitt, Texas Civ. App., 160 S.W. 1170, wr. ref.; Mecom v. Ford, Texas Civ. App., 256 S.W. 701, wr. ref.

■ Under Article XI, Section 5, Constitution of the State of Texas, and Article 1267, Vernon's Annotated Civil Statutes, and the provisions of the charter of the City of Corpus Christi, the City had the power to make an oil and gas lease on the lands owned by it, prior to the adoption of Article 5400a. Granting, for the sake of argument, that Article 5400a, Vernon's Annotated Civil Statutes, applies to cities and towns it only prescribes a method of exercising this power, but did not add anything to the power to lease already possessed by the City. By its provisions it prescribed the method of leasing city lands. In making all of the leases which the City sought to set aside by this suit, except the one of October 16, 1951, there was no advertisement for three weeks prior to the making of the lease as provided by Article 5400a. The City claims this fact makes the lease absolutely void. Since the City had the power to make an oil and gas lease on its lands, as we have above pointed out, the act of the City in this instance was not ultra vires and absolutely void.

The uncontroverted facts herein show that news articles

were run in the Corpus Christi newspapers that the City was going to make oil and gas leases on city property, and that such leasing would be upon sealed bids. The last date on which bids would be received by the City was given. These new items were first published some week or ten days prior to the acceptance of any bids. There were 14 bids submitted to the City Council, and it accepted the bid of Gregg, which the evidence shows was the highest and best bid made. For the leased dated January 24, 1950, Gregg's bid was to pay a $30,000.00 bonus, the usual 1/8ths royalty, and, in addition, an oil payment of 1/16th of the 7/8ths of the production until the aggregate of $500,000.00 had been paid; to commence operations within 25 days from date of the lease, and continue development of the property with diligence. This proposition of Gregg was accepted by the ordinance of January 24, 1950, and the form of the lease was duly approved by the City Attorney. The cash bonus was paid to the city and the drilling operations begun and a producing well was completed. The City paid one Walker about $7,100.00 of the bonus by virtue of Walker's ownership of a part of the minerals leased by the City.

The next lease was dated January 31, 1950, and was made for a bonus of $7,000.00, the usual 1/8th royalty, and an oil payment of 1/16th of the 7/8ths of the oil, gas and minerals until the sum of $35,000.00 had been paid. The bonus was promptly paid.

The next lease was made pursuant to an ordinanace of March 8, 1950, and for a bonus of $1,000.00, the usual 1/8th royalty, and an additional overriding royalty of 1/16th of 7/8th of all oil, gas and other minerals, exclusive of that used for fuel for operating the leased premises. The bonus was paid.

The next lease was dated October 16, 1951, and is conceded to have been made in accordance with the methods set out in Article 5400a. The City attacked this lease only because of its allegations of fraud and conspiracy. Our approval of the holding of the Court of Civil Appeals on the evidence with regard to fraud and conspiracy removes this objection. This lease provided for a bonus of $500.00, the usual 1/8th royalty, and, in addition, an overriding royalty of 1/32nd of 8/8th of all production. All leases provided for delay rentals and the usual covenants and agreements commonly found in oil, gas and mineral leases. There is no contention made about any of these provisions which affect this litigation.

An ordinance was duly passed authorizing the execution of all the leases involved in this suit. All leases were inspected by the City Attorney and show his approval as to form. The uncontradicted evidence shows that all bonuses were paid by Gregg at the execution of the leases; that immediate drilling was started on the premsies covered by the first lease, and that the royalties and oil payments all have been promptly paid and accepted by the City; that with the knowledge and acquiesence of the City officials, Gregg, at his own expense, had drilled 14 producing wells on these leases at the time of the trial of this case in the fall of 1953; there is evidence that it would cost about $50,000.00 to drill a well on the first lease. To drill the 14 wells would involve a very considerable outlay of funds by Gregg; that for more than two and a half years after making of the first lease the City never raised any question as to the validity of any of the leases, but accepted the benefits thereunder and permitted Gregg to spend his funds in developing the land as he was required to do under the terms of the leases; that the lands covered by the leases were all lands upon a part of which was located a portion of the water supply of Corpus Christi, and such lands had been purchased with the proceeds of a waterworks bond issue; that the bonds issued were revenue bonds secured by the revenues from such waterworks system; that all funds received by the City had been placed in the waterworks bond fund, and by date of trial all had been used to pay the principal and interest on the outstanding bonds; that such funds also had been used to pay off bonds not due; that none of the funds so received by the City were on hand, and could not be returned by the City to Gregg; and that all proceeds received by the City must be used to retire the bonds. The evidence shows that up to the time of the trial, the City had received and apppropriated as its own some $390,000.00 royalties and oil payments from production on these leases in addition to the cash bonus payments received by the City. The City had recognized the validity of the first lease by paying to Walker the $7,100.00 for his mineral interest covered by the City's lease. Gregg proved the productivity of this land by the use of his funds in drilling and developing the land. The evidence also shows that the development of these lands had not interfered with the full use and utilization of the waterworks system or the water from said lands by the City. In fact, Gregg agreed with the City, as a part of the consideration for each lease, that his operations should not contaminate or injuriosuly affect the water supply. At the time the offer of Gregg was made and leases were entered into, the territory surrounding and adjoining the City property was by no means proven territory. That particular

locality had been very disappointing to oil prospectors. Many dry holes had been drilled in this neighborhood, and the fact that one well might produce was no assurance that adjoining properties or locations would be productive. These facts were well known to the City officials as well as to Gregg. The fact that on the Ella Wade tract adjoining the first City tract leased to Gregg a well as in process of completion as a producer at the time of the offer and awarding of the lease, did not prove the City property productive.

The City stood by and encouraged and permitted Gregg to spend his funds and take the chances of a dry hole on the City land, and made no objection. Neither did it make any claims that the leases were invalid until 14 wells had been drilled by Gregg and production was assured from there.

The City relies upon the case of Culver v. Miears, Texas Civ. App., 220 S.W. 2d 200, wr. ref., for authority to set aside and cancel the leases herein involved. In that case there was no claimed estoppel plead, proved or relied upon by the lessee. That case is not controlling in our case with its facts being as we have outlined above.

■ Under all the facts and circumstances of this case, we hold that the City is estopped to deny the validity of all the leases, and cannot set aside these leases and that the action of the trial court in giving an instructed verdict in favor of Gregg should in all things be affirmed. Our holding as above set out makes a discussion of the other points of error assigned by petitioner and respondents unnecessary.

The judgment of the Court of Civil Appeals reversing and remanding this cause to the trial court is reversed and judgment of the trial court is affirmed.

Opinion delivered March 28, 1956.

Rehearing overruled May 16, 1956.