INTERNATIONAL BANK OF COMMERCE OF LAREDO, the City of Laredo, Union National Bank, Appellants,

v.

UNION NATIONAL BANK OF LAREDO, the City of Laredo, International Bank of Commerce of Laredo, Appellees.

No. 16896.

Court of Appeals of Texas, San Antonio.

April 13, 1983.

Rehearing Denied June 1, 1983.

Lawrence A. Mann, Laredo, Allen Wood, Corpus Christi, for appellants.

J.G. Hornberger, Jr., Julio A. Garcia, Eustorgio Perez, Laredo, Anthony McGettrick, Corpus Christi, for appellees.

Before ESQUIVEL, REEVES and DIAL, JJ.

## OPINION

REEVES, Justice.

June 3, 1980, the City of Laredo (City) issued an invitation for bid on its deposits of funds for a two-year period. The Union National Bank of Laredo (Union), the holder of the depository contract at that time, requested the City to postpone the submission of bids until July 14, 1980. The City agreed; a letter was transmitted to the City from Union which stated in part:

> This will confirm that Union National Bank will continue to honor the terms of the contract now in existence, until the bidding process is completed, and a new contract is let pursuant to the recent action by the City Council, Tuesday, June 10, 1980.

Thereafter, a new submission date of July 14, 1980, was set by the City. Union's bid arrived at 10:33 a.m.; three minutes after the bid submission deadline called for in the bid specifications. Upon opening the bids that day, it was ascertained that the Union was the high bidder. One of the other bidders, International Bank of Commerce of Laredo (Commerce), appeared before City Council and contended that Union should not be selected as City depository because Ray M. Keck, Jr., a member of the Board of Trustees of the City-owned Laredo Water, was owner of more than twenty percent (20%) of the stock of Union. Since funds of the Water Board as well as the City's were involved, Commerce alleged a conflict of interest existed between City and Union which violated the charter of the City and the laws of the State of Texas. Commerce also claimed Union's disqualification because of the tardiness of the bid delivery. Upon Union's assurance that it would continue to honor the depository contract entered into between Union and City in 1978, the City Council passed a resolution on July 15, 1980, to continue the depository contract with Union and institute a suit for declaratory judgment to determine the qualifications of Union to serve as depository under the depository contract that was to start July 15, 1980, and to end June 30, 1982. Shortly thereafter, suit for declaratory judgment was instituted by the City.

At a City Council meeting on November 4, 1980, a controversy arose within the Council as to the length of time it was taking to obtain the declaratory judgment. Also, there was discussion that interest rates on certificates of deposits were rising

which might inure to the benefit of the City. However, City again by resolution reaffirmed its action of July 15, 1980, to let the question of Union's qualifications be settled by the court. On November 18, 1980, City reversed its position and rejected all previous bids on the contract and instructed the City treasurer to issue a notice for new bids. On December 1, 1980, Union advised the City of its intention to assert a claim for damages arising out of the refusal of the City to accept the bid of Union tendered to the City July 14, 1980. It retendered an identical bid to the bid tendered July 14, 1980, and also wrote a letter to the treasurer of the City of Laredo which states, in part:

> Without waiver of its position that the bids heretofore submitted by Union National Bank of Laredo on July 14, 1980 should have been accepted by the City of Laredo and that there was not then, nor is there presently, any basis for the City Council refusing to accept said bids, Union National Bank hereby *retenders* such earlier submitted bids, copies of which are attached hereto, together with the requisite $500.00 certified checks called for in the bid notices; and again, urges the City Council to accept said bids. (Emphasis ours.)

Commerce tendered the highest qualified bid to the City on December 9, 1980, and Commerce and the City entered into a depository contract agreement. The City immediately attempted to transfer its deposits from Union to Commerce, but Union refused to transfer the funds. City filed a suit petitioning the court to order the transfer of the funds to Commerce, for damages, and indemnity over and against Union in the event City was found liable for failing to transfer funds to Commerce. Union responded and obtained a temporary injunction on December 30, 1980, prohibiting the transfer of City's funds to Commerce. Union argued that it was the city depository under the 1978–1980 contract until its qualifications to serve as city depository had been adjudicated in the declaratory judgment suit. Commerce intervened alleging that it had been damaged by Union's tor-

tious interference with the depository contract it had with the City and sought, in addition, exemplary damages. Commerce also sued City for breach of the depository contract.

The case was tried to a jury, and the jury found the following:

1. That the City and Union did not agree that Union would continue to act as the City's depository until the validity of Union to serve as the City's depository was determined by the courts.

2. That City had been damaged in the amount of $215,000.00.

3. That the Union had waived its right to insist on the July 14th bid when it submitted its subsequent bid on the depository contract.

4. That the City had waited a reasonable time before terminating the agreement of July 15, 1980 with Union by awarding the depository contract to Commerce on December 9, 1980.

5. That Union submitted its bid to City after 10:30 a.m. on July 14, 1980 and that the City had not waived a late filing.

6. That Commerce entered into the December 9, 1980, depository contract in good faith and that Union had intentionally and willfully refused to transfer City's funds to Commerce.

7. That Commerce had suffered actual damages of $454,053.41.

8. That Union's conduct avoiding the transfer of funds was willfully and maliciously done and exemplary damages were assessed against Union in the amount of $500,000.00.

Union filed a motion for judgment notwithstanding the verdict. On June 11, 1981 the court entered a judgment which included the following:

1. Found as a matter of law, that on or about July 15, 1980, the City and Union entered into an informal agreement wherein it was agreed that Union would act as depository

for the City until such time as the controversy concerned the qualifications of Union as such depository was resolved by judicial proceedings.

2. Found as a matter of law, that Union relied on such informal agreement and that City accepted benefits of such informal agreement by Union acting as depository after such agreement was made.

3. Found that the City, as a matter of law, was estopped to deny the validity of such interim contract.

4. Found as a matter of law, that Union acted within its rights under the terms of said contract when it refused to transfer the City's funds to Commerce.

5. Found as a matter of law, that Union acted within its legal rights when it threatened to sue the City if it were not given a new depository contract of 1980.

6. Found as a matter of law, that Union did not act with malice in refusing to transfer to Commerce the funds of the City on deposit with it on December 9, 1980.

7. Found as a matter of law, that Union did not act with malice when it threatened to sue the City if it were not given the depository contract.

8. Found as a matter of law, that Union was not disqualified to act as depositor for the City and had not been so disqualified to act as depository at any time relevant to the lawsuit.

9. Found that the City of Laredo, in failing to comply with its contract of December 9th with Commerce was acting pursuant to the order of the Court and was not liable to Commerce for breach of said contract.

10. That the City recover nothing against Union.

11. That Commerce recover nothing against either City or Union.

12. That the City was not obligated to award a depository contract to Un-

ion for the balance of the contract period ending June 30, 1982 based on the bids submitted by Union on July 14, 1980.

Both Commerce and the City seek to set aside the trial court's judgment extending the July agreement with Union and as a corollary argue that the City could not be estopped to deny the agreement. Commerce and City also urge that contrary to the court's findings and conclusions, Union was disqualified as a matter of law to serve as the City depository. The City seeks to overturn the take-nothing judgment rendered against City and in favor of Union.

Commerce contests the take-nothing judgment on its breach of contract action against the City based on the December 9, 1980 agreement. Similarly, Commerce requests the reinstatement of the jury verdict against Union for tortious interference and the accompanying punitive damages.

Union, by its sole point of error and one of its cross-points, argues that it was entitled, as a matter of law, to a ruling upholding the 1980–82 depository contract. Keck's position, as an officer of the Waterboard and as owner of twenty percent (20%) of Union stock is, in Union's view, not a fatal conflict of interest. Moreover, Union contends that the question of its possible disqualification as a City depository was resolved by previous litigation which is *res judicata* to any determination by the court in this cause. The remaining cross-points asserted by Union concern the trial court's denial of peremptory strikes and objection to the charge and the sufficiency of the evidence supporting the City's cause of action against Union.

■ When a trial court disregards the jury's answer to special issues, it is the duty of the appellate court to review the evidence in a light most favorable to the losing party, resolving all conflicts and inconsistencies in favor of the losing party. It should also infer in favor of the losing party all evidence that can reasonably be deducted. The losing party, however, has the responsibility to show that some evidence

was introduced which would sustain his cause of action and to show the appellate court that the verdict of the jury could not be supported by appellees' motion. *Guynn v. Corpus Christi Bank & Trust,* 589 S.W.2d 764, 769–70 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd) (review of instructed verdict).

With these principles, and the various positions of the parties on appeal in mind, we proceed to the merits. For purposes of clarity, we will address the parties' contentions in the following manner: (1) The July agreement between the City and Union and the estoppel of the City to deny the contract; (2) Union's conflict of interest and the 1980–82 contract; and (3) The December 9, 1980 agreement: Commerce's action for breach of contract and tortious interference.

## I. The July agreement between the City and Union and estoppel against the City.

■ City and Commerce contend that the trial court erred in disregarding special issue one wherein the jury found that Union and City had not agreed that Union would continue to act as the City's depository until the validity of the legal objections to Union's bid had been determined by the courts. We have diligently searched the record and have not found, nor have appellants drawn attention to any physical evidence introduced or testimony given to support their position. The City's only witness dealing with that subject was Mayor Aldo Tatangelo, who testified:

Q: All right sir, I'll hand you your deposition that you gave Mr. Hornberger ... Mr. Hornberger asked you about what the nature of the interim agreement was that the City of Laredo entered in with Union National Bank of Laredo; do you recall that?

A: Yeah.

Q: And what was your answer please sir?

A: To my best recollection that the Union National Bank upon a motion made by Councilman Ramos, and second by another Councilman, I believe Councilman Sanchez; that they accepted the agreement offered by the Union National Bank to continue to pay the same interest until the case was tried and decided by the court. . . .

Q: Do you recall that Councilman Ramos suggested that we would ... or inquired whether the Union National Bank would continue to act as depository for the 1978–1980 contract?

A: Yes. . . .

Q: And the clear instruction was that the City Attorney was to bring a suit forthwith to determine whether there was any legal basis for what the Bank of Commerce was contending.

A: Yes.

Q: Now, that was the nature of the agreement made at that time; was it not?

A: Yes.

Q: And that agreement was reaffirmed on November 4, 1980 by the City Council?

A: Yes.

After the controversy as to the eligibility of Union to serve as City's depository, the minutes of the City Council of July 15, 1980, show:

Alderman Sanchez suggested that a declaratory judgment be made by a court of competent jurisdiction.

Mr. Hornberger, again, pointed out that the bid was submitted at 10:33 a.m. and was late. Therefore, the Union Bank should be disqualified on this point.

Alderman Ramos asked if the Union Bank would continue to honor the old contract. Mr. Lawrence Mann stated that the Union Bank would continue and honor the old 1978–80 contract until the matter was resolved.

Alderman Ramos made a motion to honor Mr. Keck's letter honoring the old contract and to ask for declaratory judgment. Alderman Sanchez seconded the motion and all were in favor.

In compliance with the instructions of the City Council, a suit for declaratory judgment was filed immediately thereafter. This suit was later consolidated with the case which is now before this court. The City's pleadings were introduced into evidence. These pleadings provide in part:

> The current depository contract for the funds of the plaintiff City of Laredo is the defendant, Union National Bank of Laredo. Its bid for the prior depository contract having been the most favorable of the City of Laredo in 1978, and having been accepted by the City Council on August 4, 1978 by ordinance of that date. The developments hereinafter described, defendant Union National Bank continues as depository bank for the funds of the City of Laredo, by agreed extension of the depository contract of 1978, which should have expired on June 30, 1980, but remains in force until the resolution of the controversy before this court.

On November 4, 1980, the minutes of the City Council reflect the following:

> Alderman Ramos requested the City Council to again review, modify or amend the action taken by the Council on July 15, 1980, which authorized the Union National Bank to continue as the City depository and to instruct the City Attorney to draft a proper ordinance in accordance with the Council's action. Alderman Ramos stated that he believed that it was the understanding of the Council that the declaratory judgment would take about 30–90 days and it has been three months. Alderman Ramos stated that, since then, certificates of deposits are paying high interest rates; more than what the City is getting on the price of C.D. contract. The City has been losing money. . . .
>
> Alderman Flores made a motion to allow this matter be settled by the courts. Alderman Sanchez seconded the motion and it was prevailed by the following vote. . . .

The only testimony that we have found that could be construed to limit the time for Union to continue under the 1978–80 depository contract was the statement in the minutes contributed to Alderman Ramos that:

> He believed that it was the understanding of the Council that the declaratory judgment would take about 30–90 days and it has been three months. . . .

It was subsequent to that statement by Alderman Ramos that the City Council again reaffirmed their resolution to allow this matter to be settled by the courts. We hold that the trial court did not err in disregarding the answer to special issue number one, and finding that the City did agree to extend the 1978–80 contract until litigation resolved the conflict of interest issue.

The trial court found as a matter of law that City and Union entered into an informal agreement wherein Union would continue to act as depository for the City until the controversy concerning the qualification of Union as such depository was resolved by judicial proceedings. It also found as a matter of law, that Union relied on such informal agreement, that the City accepted the benefits of the informal agreement, and that the City, as a matter of law, is estopped to deny the validity of the interim contract. Commerce argues that a depository contract is a governmental act on the part of the City, and therefore, for the contract to be valid and enforceable it would be necessary for the City to adopt an ordinance approving the contract. Since the City's attempt to extend Union's contract was based on a resolution, the contract was unenforceable. The City Charter requires an ordinance to authorize such contracts. Union, responds, by contending that the City is estopped to deny its agreement.

The availability of the theory of estoppel to Union is dependent on whether the act of extending the depository contract was governmental or proprietary in nature. *City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex.1970); *City of Corpus Christi v. Gregg,* 155 Tex. 537, 289 S.W.2d 746, 750 (1956); *City of San Angelo v. Deutsch,* 126 Tex. 532, 91 S.W.2d 308, 308–09 (1936). If the City was acting in its governmental capacity, then the contract would not be enforce-

able by Union. However, the courts have carved an exception to immunity, and the City can be held responsible under the theory of estoppel for proprietary acts. *City of Houston v. Quinones,* 142 Tex. 282, 177 S.W.2d 259, 261 (1944). The test as to what constitutes a proprietary or governmental act has been stated as:

> The underlying test is whether the act performed by a city is public in its nature and performed as the agent of the state in furtherance of general law for the interest of the public at large, or whether it is performed primarily for the benefit of those within the corporate limits of the municipality.

*Id.* 177 S.W.2d at 261.

Justice Greenhill has defined the distinction in the following terms:

> Essentially, governmental functions are those normally performed by governmental units, e.g., police and fire protection, while the proprietary functions are those that can be, and often are provided by private persons, e.g., gas and electric service.

Greenhill and Murto, Governmental Immunity, 49 Texas L.Rev. 462, 463 (1971). But application of the governmental proprietary rule has not been altogether consistent. Indeed, Justice Greenhill has also written that "some of our distinctions must look pretty silly." 31 Texas Bar J. 1036, 1066 (1968). Texas courts have held that operating garbage trucks, enforcing tax liens and zoning are governmental functions. *City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex.1970); *City of San Angelo v. Deutsch,* 126 Tex. 532, 91 S.W.2d 308, 309 (1976); *Meska v. City of Dallas,* 429 S.W.2d 223, 224 (Tex.Civ.App.—Dallas 1968, writ ref'd). They have also held maintaining city roads, leasing oil and gas leases, and inspecting and repairing garbage trucks, are proprietary in nature. *City of Corpus Christi v. Gregg,* 155 Tex. 537, 289 S.W.2d 746, 750 (1956); *City of Houston v. Shilling,* 150 Tex. 387, 240 S.W.2d 1010, 1012 (1951); *City of Houston v. Ouinones,* 142 Tex. 282, 177 S.W.2d 259, 261 (1944). The case law on the subject is, therefore, in apparent disarray.

We are of the opinion, however, that a depository contract, more specifically, an extension of a depository contract by a municipality, is a proprietary act and not governmental in nature. A depository contract is not akin to essential city services such as performed by the fire, police, and sanitation departments of home rule cities. The great danger of excessive litigation, harassing the city as it performs its day-to-day operations is not very probable in the case of an activity of this nature. A city, in seeking a banking depository, seems more in a commercial or proprietary role, actively and voluntarily entering the marketplace for the highest eligible bidder, than it does in a public role providing some service. The doctrine of governmental immunity is a harsh, disfavored concept which should not be permitted beyond its necessary boundaries. *City of Houston v. Shilling,* 150 Tex. 387, 240 S.W.2d 1010, 1012 (Tex.1951). We find that the doctrine of governmental immunity does not preclude the assertion of estoppel by Union as to the extension of the depository contract by the City.

Estoppel against a city has been held to apply when,

> Where the action taken or contract made is not ultra vires, but is within the power of the city to make, and where the city has accepted and retained the benefits arising from the contract, and stood by and permitted the other party to spend his funds under the contract, the city is estopped to deny the contract existed.

*City of Corpus Christi v. Gregg,* 155 Tex. 537, 289 S.W.2d 746, 751 (1956). *See City of San Angelo v. Deutsch,* 126 Tex. 532, 91 S.W.2d 308, 309 (1936); *Panhandle Construction Co. v. City of Spearman,* 89 S.W.2d 1053, 1055 (Tex.Civ.App.—Amarillo 1935, no writ). The purpose of estoppel against a municipality is to allow an individual to enforce an act or an agreement entered into by a city which the city has the authority to participate in, but which has not been executed in a proper manner. The doctrine also prevents the city from receiving the benefit of such acts or agreements without having to perform its part of the

bargain. We believe the doctrine is applicable under the facts of this case and overrule Commerce and the City's points of error attacking the trial court's judgment on the July agreement and the issue of estoppel. Consequently, since the City is estopped to deny its July agreement with Union, the trial court correctly rendered a take-nothing judgment against Union as to the City of Laredo.

## II. Union's conflict of interest and the 1980–82 contract.

Commerce and the City also contend that Union is disqualified to contract with the City due to a conflict of interest. At the July 14, 1980 bid opening for the depository contract for the years 1980–1982, Ray M. Keck, Jr., was a trustee of the Laredo Waterworks Board of Trustees and owned stock in Union. As authority, Commerce cites article 2529c of Vernon's Texas Civil Statutes enacted in 1967, which provides in part:

Section 1. The selection and qualification of depositories for the deposit of public funds of all agencies and political subdivisions of the State shall be in accord with the laws now in effect and hereinafter enacted pertaining thereto.

Section 2. The fact that an employee or officer of a State agency or political subdivision, who is not charged with the duty of selecting the depository thereof, is an officer, director or stockholder of a bank shall not disqualify said bank from serving as the depository of said State agency or subdivision. . . .

Common law rules in conflict with the terms and provisions of this Act are hereby modified as herein provide, but this Act shall never be deemed to alter, change, amend or supercede the provisions of any home rule city charter which is in conflict herewith.

Tex.Rev.Civ.Stat.Ann. art. 2529c (Vernon Supp.1982).

The City of Laredo is a home rule city. Section 15 of its Charter provides:

No member of the City Council or other city official shall hold any other office or employment under the city, and no alderman, officer employee or servant of the city shall be directly or indirectly interested in any purchase, sale, business, work or contract, the expense, price or consideration of which is paid from the city treasury, or by an assessment of taxes levied by the City Council; . . .

It is the position of City and Commerce that the aforementioned statute and Charter provision disqualify Union from acting as depository for the City. In response, Union asserts that the statute is not applicable since Keck, as trustee of the Waterboard, does not select the depository. Further, the Charter does not preclude his serving or Union's selection, because the price or consideration of the depository contract is not *paid* by the City treasurer nor by assessment of taxes by the City Council. Conversely, the City deposits its funds with Union who in turn pay interest to the City. In *City of Edinburg v. Ellis,* 59 S.W.2d 99 (Texas Com.App.1933, opinion approved), the court stated "It is the general rule that municipal contracts in which officials' or employees of the city have a personal pecuniary interest are void." *Id.* The facts in *Delta Electric Construction Co., Inc. v. City of San Antonio,* 437 S.W.2d 602 (Tex.Civ. App.—San Antonio 1969, writ ref'd n.r.e.), are very similar to this case. A shareholder of Delta was appointed to serve on the Electrical Examining and Supervising Board of the City of San Antonio. Delta was awarded a contract to construct certain improvements to the waterworks system of the city. The waterworks of the City of San Antonio was owned by the city, but the Waterworks Board had full management and control of the water system. The Court held that a contract with the Waterworks was a contract with the City and a member of the Electrical Board was an officer of the City. In its holding that the City of San Antonio because of its conflict of interest the court stated, "It has long been the public policy of this state to prohibit officers of a city from having a personal pecuniary interest in contracts with the city . . . ." *Id.* at 609. The foregoing rule rests upon sound public policy. Its

object is to insure to the city strict fidelity on the part of those who represent and manage its affairs. The rule prohibiting public servants from having a pecuniary interest in public contracts should be scrupulously enforced. These authorities aptly express the proper concern and expectations for those who have the responsibility to govern and expend public funds.

It is now necessary for us to construe section 15 of the Charter of the City of Laredo. We are of the opinion that the obvious intent of section 15 of the Charter is to prohibit a city official or employee from having an opportunity to benefit by his position with the City and, from that vantage point, influence a transaction by the City that might inure to the benefit of the official and not the City. "A man cannot serve two masters." The contention of Union that, as the City's depository, it is a debtor and that it pays interest to the City is true in a technical sense, but it is equally true that Union derives a benefit and a pecuniary gain from its contract with City. Moreover, the 1980–82 depository contract has a provision wherein the City pays an interest charge on overdrafts. Keck, at the time of the 1980–82 bid, owned more than 20% of the outstanding stock of Union, and was also its president as well as chairman of the Waterworks of the City of Laredo. The Waterworks and the City each had a separate depository contract with Union. The contract with the Waterworks provided that designations as to the amount and length of the interest bearing time deposits would be made by the mayor and the City treasurer. However, the uncontroverted testimony of the treasurer of the City was that the decision as to the amount and length of time of the interest bearing time deposits were made by the manager of the Waterworks who worked directly under the Board of Directors of the Waterworks. The amount of funds deposited in the interest bearing time deposit and the time of maturity of the deposits were directly related to the financial benefit that Union would receive under the depository contract. Although the manager testified that he never consulted Keck or the Board as a whole

about the time deposits does not alter the fact that the opportunity was available for the Board of Directors to bring pressure on the manager to favor Union. We conclude that this fact alone creates a conflict of interest which would prohibit Union from bidding on the 1980–82 depository contract. Without inferring any wrongful intent and assuming that Union had honored the depository contract between City and Commerce, in December 1980, the record in this case shows that the Waterworks had interest bearing time deposits that would not mature for two months hence while the City interest bearing time deposits matured around December 1, 1980. We are of the opinion that Keck's service on the Board of the Waterworks System while at the same time owning stock in Union, created a conflict of interest which disqualified Union from acting as the depository for the City as a matter of law. Commerce and the City's attack was limited to Union's qualifications for the 1980–82 contract. The 1978–80, or any previous depository contracts were not placed in issue. Moreover, the July 1980 extension of Union's 1978–80 contract was for that time necessary to obtain this judicial resolution of Union's qualifications for the 1980–82 contract at the time of the July, 1980 bids.

We are also of the opinion that Union is mistaken in its assertion that the allegations of its conflict of interest has been judicially determined in its favor. In 1978, Commerce filed a suit for declaratory judgment asking determination of its eligibility to bid for the depository contract with the City of Laredo. It alleged that members of the City Council owned shares of stock in Commerce but individually and collectively owned less than ten percent (10%) of the bank's outstanding capital stock. It alleged that Commerce wanted to submit a bid for the funds of the City of Laredo but was prohibited from doing so by an opinion of a former City Attorney of the City. Also, the provisions of article 2529c supercede the provisions of section 15 of the City Charter. The district judge on July 28, 1978, entered a judgment which declared:

1. That the provisions of section 15 of the Charter were interpreted to mean

that so long as the mayor and members of the City Council of the City do not individually or collectively own a beneficial interest in more than ten percent of the bank's outstanding capital stock, Commerce was not disqualified to bid on the depository contract.

2. That any contract entered into between Commerce and the City for the deposit of the funds of City would not be in violation of the provisions of article 2529c.

Union intervened and asked the court to interpret and establish certain bidding procedures. The judgment found that as to Union no justiciable controversy existed between the parties, and that any and all other relief for Union, be denied. In the present controversy Keck was trustee of the Water Board of City at the time of the opening of the bids in the 1978–1980 depository contract and was president and owner of more than twenty percent (20%) of the stock of Union. The Supreme Court has held that a "judgment on the merits in a suit on one cause of action is not conclusive of a subsequent suit on a different cause of action except as to the issues of fact actually litigated and determined in the first suit." *Griffin v. Holiday Inns of America,* 496 S.W.2d 535, 538 (Tex.1973). This court held in *Lozano v. Patrician Movement,* 483 S.W.2d 369 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.), that "in order for a judgment in one suit to bar the bringing of a subsequent suit there must be: identity in the thing sued for; identity of the cause of action; identity of the persons and the parties to the action; and identity of quality in the persons or parties." *Id.* at 371. We hold that the defense of *res judicata* is not available to Union and reverse and render as to that portion of the judgment concerning conflict of interest. We, therefore, need not address Union's cross-points on special issues and peremptory strikes.

III. The December 9, 1980 agreement: Commerce's action of tortious interference and breach of contract.

Commerce alleges the trial court erred in setting aside the jury findings as to tortious interference and punitive damages. The jury had found for Commerce on these issues and awarded $454,053.41 in compensatory damages and $500,000.00 in punitive damages. We believe, however, the trial court correctly disregarded these jury findings.

Not all interferences with contractual relations are tortious in nature. A contractual interference would have to be "without right or justification" to be the basis of relief for tortious interference. *Black Lake Pipeline Co. v. Union Construction Co.,* 538 S.W.2d 80, 90 (Tex.1976). The interference must, in fact, be "knowingly done without right or justifiable cause." *Montgomery v. Phillips Petroleum Co.,* 49 S.W.2d 967, 972 (Tex.Civ.App.—Amarillo 1932, writ ref'd). There is no evidence that Union acted under anything other than the good faith belief that it had a binding agreement with the City, based upon the July resolution. At the very least the legal obligations of the parties concerning the Laredo City depository were in serious question in December of 1980, and were in fact the basis for this complex litigation. In this respect, the situation is similar to that in *Kerry v. Zachary,* 272 S.W.2d 157 (Tex.Civ.App.—San Antonio 1954, writ ref'd), where the defendant relied upon "an unliquidated and *disputed or doubtful claim." Id.* at 159. (Emphasis added).

The failure of Commerce to maintain its cause of action for tortious interference precludes their recovery for punitive damages. Exemplary damages may not be recovered in the absence of recovery of actual damages. *Hicks v. Wright,* 564 S.W.2d 785, 795 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.).

Appellant Commerce also asserts that the trial court erred when it found as a matter of law that the City was not liable for breach of contract and that the City had acted pursuant to the trial court's temporary injunction. The City does not contest the fact that Commerce had a valid con-

tract for the City deposits as of December 9, 1980. The City asserts, however, that it is excused from performance by means of its good faith efforts to perform and by reason of the temporary injunction granted by the court prohibiting their transfer of deposits to Commerce.

 Union obtained an injunction prohibiting the City from transferring its deposits from Union to Commerce. Therefore, the City was absolved, as a matter of law, from performance on the contract. This case is analogous to those cases in which a receiver has been appointed and the subject matter of the contract is therefore under the control of the court. *See Moller v. Herring,* 255 F. 670, 671 (5th Cir.1919). Texas recognizes the rule that a promissor may be excused from performance of a contract by intervening changes in the law. *Houston Ice & Brewing Co. v. Keenon,* 99 Tex. 79, 88 S.W. 197, 198 (1905).

We affirm the trial court in all matters save the conflict of interest issue.

ESQUIVEL, J., dissents without opinion.