OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 27, 2002

The Honorable J.E. "Buster" Brown
Chair, Natural Resources Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. JC-0484

Re: Whether the Texas Council on Environmental Technology may award a grant to one of its members or to a university that employs a member, and related question (RQ-0444-JC)

Dear Senator Brown:

Under the common law, if an officer of a governmental body has an interest in a contract before the body, the governmental body may not enter the contract. *See* Tex. Att'y Gen. Op. No. JC-0437 (2001) at 4. You question whether conflict-of-interest rules preclude the Texas Council on Environmental Technology (the Council) from awarding a grant to a member of the Council, as an individual, or to a university that employs a member.[1] Because we conclude that a grant is subject to the strict common-law rule, we determine that a conflict of interest precludes the Council from making a grant to either a member or to a university that employs the member.

You further ask whether a conflict can "be resolved[] either by the member recusing himself from the vote on the award of that grant[] or by some other means." Request Letter, *supra,* at 2. Because the grant is subject to the strict common-law rule, the conflict may not be resolved by recusal.

The Seventy-seventh Legislature added a new chapter 387 to the Health and Safety Code, which creates the Council to "establish and administer a new technology research and development program." TEX. HEALTH & SAFETY CODE ANN. § 387.003(a) (Vernon Supp. 2002); *see also* Act of May 24, 2001, 77th Leg., R.S., ch. 967, § 1(b), sec. 387.003(a), 2001 Tex. Sess. Law Serv. 1970, 1984. The Council "consists of [eleven] members appointed by the governor to represent the academic and nonprofit communities." TEX. HEALTH & SAFETY CODE ANN. § 387.002(a) (Vernon Supp. 2002). Council members "serve six-year staggered terms." *Id.* The Council must, in particular,

---

[1]Letter from Honorable J.E. "Buster" Brown, Texas State Senate, to Honorable John Cornyn, Texas Attorney General, at 2 (Oct. 3, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

work to enhance the entrepreneurial and inventive spirit of Texans to assist in developing solutions to air, water, and waste problems by:

(1) identifying and evaluating new technologies and seeking the approval of the United States Environmental Protection Agency for and facilitating the deployment of those technologies; and

(2) assisting the commission and the United States Environmental Protection Agency in the process of ensuring credit for new, innovative, and creative technological advancements.

*Id.* § 387.002(b). The Council also must "establish and administer a new technology research and development program," *id.* § 387.003(a), which will "provide grants to . . . support development of emissions-reducing technologies that may be used for projects eligible for awards under Chapter 386 [Texas Emissions Reduction Plan] and other new technologies that show promise for commercialization," *id.* § 387.003(b); *see also id.* § 387.006 (discussing evidence of commercialization potential). Section 387.004 permits the Council to issue "specific requests for proposals . . . or program opportunity notices . . . for technology projects to be funded under the program." *Id.* § 387.004. Section 387.005 lists eligible grant projects:

(a) Grants awarded under this chapter shall be directed toward a balanced mix of:

(1) retrofit and add-on technologies to reduce emissions from the existing stock of vehicles targeted by the Texas emissions reduction plan;

(2) advanced technologies for new engines and vehicles that produce very-low or zero emissions of oxides of nitrogen, including stationary and mobile fuel cells;

(3) studies to improve air quality assessment and modeling;

(4) advanced technologies that promote increased building and appliance energy performance; and

(5) advanced technologies that reduce emissions from other significant sources.

(b) The . . . Council shall identify and evaluate and may consider making grants for technology projects that would allow qualifying fuels to be produced from energy resources in this state. In considering projects under this subsection, the [C]ouncil shall give

> preference to projects involving otherwise unusable energy resources in this state and producing qualifying fuels at prices lower than otherwise available and low enough to make the projects to be funded under the program economically attractive to local businesses in the area for which the project is proposed.
>
> (c) In soliciting proposals under Section 387.004 and determining how to allocate grant money available for projects under this chapter, the . . . Council . . . shall give special consideration to advanced technologies and retrofit or add-on projects that provide multiple benefits by reducing emissions or particulates and other air pollutants.
>
> (d) A project that involves publicly or privately owned vehicles or vessels is eligible for funding under this chapter if the project meets all applicable criteria.

*Id.* § 387.005(a)-(d). The Council "may require cost-sharing for technology projects funded under this chapter but may not require repayment of grant money, except that the [C]ouncil shall require provisions for recapturing grant money for noncompliance with grant requirements. Grant money recaptured under the contract provision shall be . . . reallocated for other projects under this chapter." *Id.* § 387.007.

Section 572.058 of the Government Code, which governs agency conflicts of interest in rule-making and quasi-judicial functions, does not apply to contracts. *See* TEX. GOV'T CODE ANN. § 572.058(a) (Vernon 1994); Tex. Att'y Gen. Op. No. JM-671 (1987) at 6; *accord* Op. Tex. Ethics Comm'n Nos. 412 (1998) at 1 n.1, 298 (1996) at 2 n.2, 220 (1994) at 2 n.3. Under section 572.058, an officer of a state agency like the Council with an interest in a decision before the agency must disclose the interest and recuse him- or herself from participating in the matter:

> An elected or appointed officer, other than an officer subject to impeachment under Article XV, Section 2, of the Texas Constitution [which lists the Governor, Lieutenant Governor, Attorney General, Commissioner of General Land Office, Comptroller, and certain judges], who is a member of a board or commission having policy direction over a state agency and who has a personal or private interest in a measure, proposal, or decision pending before the board or commission shall publicly disclose the fact to the board or commission in a meeting called and held in compliance with Chapter 551. The officer may not vote or otherwise participate in the decision. The disclosure shall be entered in the minutes of the meeting.

TEX. GOV'T CODE ANN. § 572.058(a) (Vernon 1994). This statutory conflict-of-interest provision applies only to "rule making and the application of the statute and rules to individual cases." Tex. Att'y Gen. Op. No. JM-671 (1987) at 5.

In our opinion, a grant from the Council represents a contractual relationship that is not subject to section 572.058, even if a formal contract is not executed. Under article III, section 51 of the Texas Constitution, a state agency may not make a grant unless the body has found that the grant will serve a public purpose and the body has placed sufficient controls on the transaction to ensure that the public purpose is accomplished. *See* TEX. CONST. art. III, § 51 (withholding from Legislature power to make any grant or to authorize making of any grant of public moneys to individual, association, or corporation). This constitutional provision and others like it, *see, e.g., id.* §§ 50, 52(a); *id.* art. VIII, § 3, are intended to prevent a governmental entity from applying public funds to private purposes. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 739-40 (Tex. 1995) (quoting *Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (Tex. 1928)). Nevertheless, the constitution "does not bar a governmental expenditure that benefits a private interest if it is made" to directly accomplish a legitimate public purpose. Tex. Att'y Gen. Op. No. JC-0146 (1999) at 2. Attorneys general long have interpreted section 51 not to forbid a state agency from expending public funds in a way "that benefits a private person or entity if the . . . governing body (i) determines that the expenditure serves a public purpose and (ii) places sufficient controls on the transaction to ensure that the public purpose is carried out." *Id.* A contract that imposes upon a recipient an obligation to perform a function benefitting the public may provide adequate control for constitutional purposes. *See Key v. Comm'rs Court of Marion County*, 727 S.W.2d 667, 669 (Tex. App.–Texarkana 1987, no writ) (per curiam); Tex. Att'y Gen. Op. No. JC-0439 (2001) at 2. Because of the need for controls on the use of the grant, the grants at issue resemble a contractual relationship even though a contract may not be executed. Moreover, the statute itself appears to envision that the grants will be made under a contract: section 387.007 directs the Council to "require provisions for recapturing grant money for noncompliance with grant requirements. Grant money recaptured under the contract provision shall be . . . reallocated for other projects under this chapter." TEX. HEALTH & SAFETY CODE ANN. § 387.007 (Vernon Supp. 2002). Conversely, a grant is not a rule-making or quasi-judicial function of the sort that is subject to section 572.058 of the Government Code. *See* TEX. GOV'T CODE ANN. § 572.058(a) (Vernon 1994); Tex. Att'y Gen. Op. No. JM-671 (1987) at 5.

Rather, a grant from the Council is subject to a strict common-law conflict-of-interest rule that flatly prohibits a governmental body from entering a contract in which one of its members has a personal pecuniary interest. *See* Tex. Att'y Gen. Op. No. JC-0437 (2001) at 4; Tex. Att'y Gen. LO-97-052, at 3 (quoting Tex. Att'y Gen. LO-93-12, at 2). The Texas Court of Appeals enunciated the common-law rule in *Meyers v. Walker*:

> If a public official directly or indirectly has a pecuniary interest in a
> contract, no matter how honest he may be, and although he may not
> be influenced by the interest, such a contract so made is violative of
> the spirit and letter of our law, and is against public policy.

*Meyers v. Walker*, 276 S.W. 305, 307 (Tex. Civ. App.–Eastland 1925, no writ); *accord* Tex. Att'y Gen. Op. No. JC-0437 (2001) at 4; *cf. City of Edinburg v. Ellis*, 59 S.W.2d 99, 99-100 (Tex. Comm'n App. 1933, holding approved) (applying rule in municipal context); *Int'l Bank of Commerce of Laredo v. Union Nat'l Bank of Laredo*, 653 S.W.2d 539, 547 (Tex. App.–San Antonio 1983, writ ref'd n.r.e.) (same); *Delta Elec. Constr. Co. v. City of San Antonio*, 437 S.W.2d 602, 609 (Tex. Civ. App.–San Antonio 1969, writ ref'd n.r.e.) (same).

Under the strict common-law rule, even a very small pecuniary interest may constitute a prohibited financial interest in a public contract. *See* Tex. Att'y Gen. Op. No. JM-817 (1987) at 2; JM-671 (1987) at 3; JM-424 (1986) at 4; Tex. Att'y Gen. LO-97-052, at 2. Indeed, "[m]ere employment is sufficient to trigger" the common-law conflict-of-interest rule. Tex. Att'y Gen. Op. No. DM-18 (1991) at 2. Moreover, the strict common-law rule reaches a public official's indirect, as well as direct, pecuniary interests. *See Bexar County v. Wentworth*, 378 S.W.2d 126, 128-29 (Tex. Civ. App.–San Antonio 1964, writ ref'd n.r.e.); Tex. Att'y Gen. Op. Nos. JM-817 (1987) at 2; JM-671 (1987) at 3; Tex. Att'y Gen. LO-97-052, at 2. A contract that violates the strict common-law rule is void even if the interested official recused him- or herself. *See* Tex. Att'y Gen. LO-97-052, at 3 (quoting Tex. Att'y Gen. LO-93-12, at 2 and *Delta Elec. Constr. Co. v. City of San Antonio*, 437 S.W.2d 602, 608-09 (Tex. Civ. App.–San Antonio 1969, writ ref'd n.r.e.)).

We consequently conclude that the Council may not award a grant to one of its members. A Council member has a direct pecuniary interest in a grant, and the common-law rule prohibits the grant. Even if the member were to recuse him- or herself, the contract would be void.

We likewise conclude that the Council may not award a grant to a university that employs a Council member. While the strict common-law rule has been applied to preclude contracts between a governmental entity and a private entity in which a public official has an interest, we have found no Texas authorities considering its applicability to a contract between two governmental entities. Nevertheless, it is consistent with the strict common-law rule to extend it to prohibit a contractual grant relationship between two governmental entities where an employee of a grant recipient sits on the governing board of the organization distributing grants. In either context, the rule "guards against competing interests of a public official which would 'prevent him from exercising absolute loyalty and undivided allegiance to the best interest' of the governmental entity he serves." *See* Tex. Att'y Gen. Op. No. H-1309 (1978) at 2 (quoting *Miller v. Martinez*, 82 P.2d 519 (Dist. Ct. App. Cal. 1938)) (extending policy against dual agency to transaction involving governmental entity); *see also* Tex. Att'y Gen. Op. No. JC-0407 (2001) at 6 (same). Certainly, if the Council member is a university employee designated to conduct the research that will be funded, the Council member has a pecuniary interest in the grant. But even if the Council member is not designated to conduct the research, he or she has a direct or indirect pecuniary interest in the grant: for example, one research project may lead other organizations to fund similar research projects at the same university; the grant funds may be used to purchase improved equipment for the research project that may later be used by other university faculty; or the university may enjoy increased prestige for its work in the particular area of research, which may translate into salary increases. *Cf. Pitts v. Larson*, – N. W.2d –, 2001 WL 1658279, *3 (S.D. 2001) (stating that state legislator who

was employed by South Dakota State University Cooperative Extension Service had "indirect interest" in legislature's appropriation to extension service); Tex. Att'y Gen. Op. No. JC-0018 (1999) at 3 (and opinions cited therein) (concluding that housing authority employee who owns home in housing project has interest in project); JM-884 (1988) at 2 (stating that member of Texas Commission for the Deaf has pecuniary interest in contract between Commission and local nonprofit organization that provides services to Commission if member is compensated by local organization).

Finally, under the common-law rule, the interested Council member's recusal will not affect the fact that the contract is void. *See* Tex. Att'y Gen. LO-97-052, at 3 (quoting Tex. Att'y Gen. LO-93-12, at 2 and *Delta Constr. Elec. Co.*, 437 S.W.2d at 608-09).

Of course, the legislature may adopt a statute that overcomes the common-law conflict-of-interest rule in this circumstance. *See* Tex. Att'y Gen. Op. No. JC-0225 (2000) at 3 (stating that legislature may adopt statute that overcomes common-law incompatibility doctrine). The statutes governing the Telecommunications Infrastructure Fund, for instance, explicitly address a situation in which a member of the Telecommunications Infrastructure Fund Board may be employed by an entity applying for a grant or loan from the board:

> If a board member is an employee of an entity that applies for a grant or loan under this subchapter, the board member, before a vote on the grant or loan, shall disclose the fact of the member's employment. The disclosure must be entered into the minutes of the meeting. The board member may not vote on or otherwise participate in the awarding of the grant or loan. If the board member does not comply with this subsection, the entity is not eligible for the grant or loan.

TEX. UTIL. CODE ANN. § 57.047(e) (Vernon Supp. 2002).

Section 51.923 of the Education Code, which concerns the qualifications of a business entity that shares a member or director with a regent of an institution of higher education, does not affect our conclusion. *See* TEX. EDUC. CODE ANN. § 51.923 (Vernon 1996). Subsection (b) states that "[a] nonprofit corporation is not disqualified from entering into a contract or other transaction with an institution of higher education even though one or more members of the governing board of the institution of higher education also serves as a member or director of the nonprofit corporation." *Id.* § 51.923(b). Subsection (d) permits an institution of higher education to enter "a contract or other transaction described in this section if any board member having an interest described in this section in the contract or transaction discloses that interest in a meeting held in compliance with Chapter 551, Government Code, and refrains from voting on the contract or transaction." *Id.* § 51.923(d). For the purposes of section 51.923, a "nonprofit corporation" is "any organization exempt from federal income tax under Section 501 of the Internal Revenue Code of 1986 that does not distribute any part of its income to any member, director, or officer." *Id.* § 51.923(a) [footnote omitted]. A nonprofit corporation is a private entity and is, therefore, distinguishable from a public entity. *See*

Tex. Att'y Gen. Op. No. JM-852 (1988) at 3; Tex. Att'y Gen. LO-95-014, at 3. A state agency is a public entity. *See* Tex. Att'y Gen. LO-95-014, at 3. This office construes section 51.923 according to its clear terms. *See RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985) (directing that statute be construed according to its plain language); *Bouldin v. Bexar County Sheriff's Civil Serv. Comm'n*, 12 S.W.3d 527, 529 (Tex. App.–San Antonio 1999, no pet.) (stating that court may not insert additional words into statute unless it is necessary to effect clear legislative intent). Given that the Council is a state agency, and hence, a public entity, it may not enter a contractual relationship, including a grant of money, with a university under section 51.923 of the Education Code.

## S U M M A R Y

A grant made under chapter 387 of the Health and Safety Code is subject to the strict common-law rule prohibiting conflicts of interest. *See* Tex. Health & Safety Code Ann. ch. 387 (Vernon Supp. 2002). Consequently, the Texas Council on Environmental Technology may not award a grant if a member has a direct or indirect pecuniary interest in the grant, including a grant to the member him- or herself or a grant to the university that employs the member. The interested Council member's recusal will not affect the fact that the contract is void.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee