Priscilla D. SLADE, Appellant

v.

TEXAS SOUTHERN UNIVERSITY
BOARD OF REGENTS,
Appellee.

No. 01–06–00990–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 30, 2007.

Derek Daniel Bauman, Ronald G. Franklin, Franklin, Cardwell & Jones, P.C., Houston, TX, for Appellant.

Greg Abbott, James "Beau" Eccles, Office of the Attorney General, General Litigation Division, Austin, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

This is an interlocutory appeal from the trial court's order granting a plea to the

jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon Supp. 2006). Appellant Priscilla D. Slade sued both appellee Texas Southern University Board of Regents and an individual regent, William King, for allegedly breaching her employment contract. Slade claimed she was not given a hearing to contest the Board's decision to terminate her for cause as university president. The Board filed a plea to the jurisdiction, asserting sovereign immunity and the absence of a justiciable controversy. The trial court granted the Board's plea to the jurisdiction, thereby dismissing all of Slade's claims against the Board. We affirm.

### Facts

Slade signed an employment contract with Texas Southern University in 2003 to serve as the University's president and chief executive officer. On April 17, 2006, after being presented with evidence of Slade's alleged financial misconduct, the Board elected to terminate Slade's employment as president. Two days later, Slade invoked a clause in her employment contract entitling her to a public hearing prior to her termination. On April 22, the Board issued a written acknowledgment of Slade's contractual right to a termination hearing, and on May 5, the Board set the hearing for a date thirty days later, giving Slade proper notice of the time and place of the hearing.

The hearing was set for, and subsequently held on, June 7. Despite her own request for the public hearing, Slade failed to appear.

 At the conclusion of the June 7 hearing, the Board voted to terminate Slade's employment as president. A plea to the jurisdiction is a dilatory action that seeks dismissal of a case for lack of subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554

(Tex.2000). A trial court must have subject-matter jurisdiction in order to adjudicate a case. *See, e.g., Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Sovereign immunity from suit bars an action against the State, depriving the trial court of subject-matter jurisdiction, unless the State expressly consents to the suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999). Because subject-matter jurisdiction is a question of law, we review a trial court's decision to grant a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004); *see also Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002).

 When reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings liberally in the plaintiff's favor and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). If the evidence creates a fact question regarding a jurisdictional issue, then the trial court should not grant the plea until the fact issue is resolved. *Miranda*, 133 S.W.3d at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court should rule on the plea as a matter of law. *Id.* at 228. If no evidence is submitted, however, the court reviews the petition to determine if sufficient facts were pleaded to overcome the presumption of governmental immunity. *See City of Pasadena v. Thomas*, No. 01–05–00333–CV, slip op. at 4, —— S.W.3d ——, ——, 2006 WL 2506992, *2 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

 Sovereign immunity protects the State of Texas, its agencies, and its officials from lawsuits for damages, absent legislative consent to sue the State. *See Dir. of Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265 (Tex.1980). This immunity extends to various divisions of state government, including universities. *Tooke v. City of Mexia*, 197 S.W.3d 325, 330 n. 11 (Tex.2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003). Sovereign immunity encompasses two distinct types of immunities: immunity from suit and immunity from liability. *Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970), *overruled on other grounds by Tooke*, 197 S.W.3d 325. Immunity from suit bars any suit against the State that the State has not expressly consented to by legislative action. *IT–Davy*, 74 S.W.3d at 853. Immunity from liability protects the State from money judgments even if the legislature has expressly given consent to sue. *Id.* It is the Legislature's sole province to waive or abrogate sovereign immunity. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex.1997).

 As an arm of the State, Texas Southern's Board of Regents is entitled to sovereign immunity. Therefore, Slade cannot sue the Board without showing legislative consent or waiver. Sovereign immunity does not, however, mean that the State can freely breach contracts with private parties. *IT–Davy*, 74 S.W.3d at 854. When the State contracts with a private party, it waives immunity from liability on those contracts as if it were a private party. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001), *overruled on other grounds by Miranda*, 133 S.W.3d 217; *Fed. Sign*, 951 S.W.2d at 405. However, in any suit against the State, the plaintiff must affirmatively demonstrate the court's subject-matter jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003).

 Slade argues that the Board waived its sovereign immunity by engaging in inequitable conduct. Specifically, Slade claims that the Board and regent King, individually, "made accusations" about her "without proof ... or any substantiation," "released to the media a report that was misleading and calculated to create an impression of wrongdoing," "threatened during a board meeting that [Slade] will never work again as a university president," and began the search for a new president before she was given "any opportunity to be heard." Slade contends that her right to be heard was denied by these actions, which she claims amount to inequitable conduct on the part of the Board.

Slade bases her inequitable-conduct argument on Justice Hecht's concurring opinion in *Federal Sign. See Fed. Sign*, 951 S.W.2d at 412 (Hecht, J., concurring). *Federal Sign*, however, and specifically Justice Hecht's concurrence, do not control the outcome in this case. Justice Hecht made clear in *Federal Sign* that the court was "not attempt[ing] to decide ... hypotheticals" as to what kind of conduct related to a contract dispute would amount to inequitable conduct. *Id.* Rather, the court held only that mere execution of a contract does not waive immunity. *Id.* at 413.

The Texas Supreme Court has addressed the waiver-by-conduct exception since *Federal Sign*, and it has refused both to define the scope of those hypotheticals and to create an explicit waiver-by-conduct

exception to sovereign immunity.[1] In *IT–Davy,* a plurality of the court urged a bright-line approach barring a waiver-by-conduct exception under any circumstances. *IT–Davy,* 74 S.W.3d at 857. Still, Justice Hecht, writing for the four-justice plurality, concurred, saying that the facts did not rise to the level anticipated in his hypotheticals in *Federal Sign. Id.* at 860–62. He wrote, "My hypothetical supposed a government agency that chiseled a contractor just because it could get away with doing so.... This is nothing more than an ordinary contract dispute." *Id.* at 861.

In *Travis County v. Pelzel & Associates, Inc.,* the supreme court rejected the waiver-by-conduct theory in a construction contract case. 77 S.W.3d 246, 252 (Tex.2002). The supreme court held that "[w]hen a governmental unit adjusts a contract price according to the contract's express terms, it does not, by its conduct, waive immunity from suit, even if the propriety of the adjustment is disputed." *Id.* Travis County invoked a liquidated damages clause contained in the contract it held with Pelzel, which entitled the county to withhold a portion of the contract price. *Id.* The court refused to adopt a waiver-by-conduct exception when the immune entity merely invoked and complied with the terms of the contract. *Id.*

Slade points to language in *Catalina Development, Inc. v. County of El Paso,* to support her proposition that *Federal Sign* established a waiver-by-conduct exception to sovereign immunity. 121 S.W.3d 704 (Tex.2003). She argues that one clause in the *Catalina* opinion recognizes that a such a waiver exists: "Although in *Federal Sign* we suggested that some circum-stances might warrant recognizing a waiver by conduct." *Id.* at 706. However, the supreme court went on to conclude that the circumstances suggested in *Federal Sign* that might warrant such an exception "[did] not exist under this set of facts." *Id.* We do not interpret this language as recognition by the supreme court that a waiver-by-conduct exception to sovereign immunity exists in light of other decisions to the contrary.

Slade also points to the supreme court's opinion in *Texas A & M University–Kingsville v. Lawson* and this Court's opinion in *Texas Southern University v. State Street Bank & Trust* to support her argument that a waiver-by-conduct exception should be applied. *Tex. A & M Univ.-Kingsville,* 87 S.W.3d 518 (Tex. 2002); *Tex. S. Univ. v. State St. Bank & Trust,* 212 S.W.3d 893 (Tex.App.-Houston [1st Dist.] 2007, pets. denied). Neither opinion supports appellant's argument, because each was significantly factually different from this case. In *Lawson,* the supreme court adopted a specific exception to immunity from suit in breach-of-contract cases: When the State settles a claim from which it does not have immunity, sovereign immunity from suit does not protect the State from a breach-of-contract action to the settlement agreement. *Lawson,* 87 S.W.3d at 518.

In *State Street,* this Court held that the State was not immune from suit due to the "extraordinary factual circumstances" found in that case. *State St.,* 212 S.W.3d at 907. There, Texas Southern University entered into a contract in which it agreed to pay approximately $13 million for equipment and services. *Id.* at 908. After it had received the equipment and services,

1. *See Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704 (Tex.2003); *Tex. A & M Univ.-Kingsville v. Lawson,* 87 S.W.3d 518 (Tex.2002); *Travis County v. Pelzel & Assocs.,* 77 S.W.3d 246 (Tex.2002); *IT–Davy,* 74 S.W.3d 849; *Little–Tex Insulation Co.,* 39 S.W.3d 591.

Texas Southern refused to pay, claiming that the contracts were invalid. *Id.* This Court held that sovereign immunity from suit did not shield Texas Southern from a breach-of-contract claim based on those facts and the following argument by one of the plaintiffs:

> [T]he injustice is even worse [than the facts found by the trial court], because this case also includes an additional fact that appears in none of the prior cases: The government officials lured [plaintiff] into the Master Lease with false promises that the contract would be valid and enforceable, then disclaimed any obligation on the contract by taking the position that the contract was not valid after all.

*Id.*

In Slade's case, however, it is undisputed that the contract between Slade and Texas Southern was valid and enforceable. Furthermore, the Board is neither avoiding enforcement of a settlement claim, nor is it claiming that the contract is not valid. While Slade has pleaded facts that could conceivably result in a holding on the merits that the Board or an individual regent breached her employment contract, there is nothing in the facts she has pleaded that rise to the level of the "extraordinary factual circumstances" found in *State Street*.[2]

Like *IT–Davy* and *Pelzel & Associates*, and unlike the "extraordinary circumstances" of *State Street*, Slade's case is an ordinary contract dispute. *See IT–Davy*, 74 S.W.3d at 861 (Hecht, J., concurring); *see Pelzel & Assocs.*, 77 S.W.3d at 252. While we recognize the harsh reality of sovereign immunity from suit, we hold that the waiver-by-conduct exception does not apply in this case.

■ Alternatively, Slade argues that even if the Board has not waived its sovereign immunity from suit, nonetheless her request for declaratory relief is not barred. The supreme court has enumerated two scenarios in which private parties may attempt to bring declaratory actions against the State. *See IT–Davy*, 74 S.W.3d at 855–56. In the first, private parties can sue for a declaratory judgment against state officials who allegedly act without legal or statutory authority. *Id.* at 855. These actions are suits to compel state officers to act within their official capacity and are not considered to be suits against the State. *Id.* Therefore, these suits do not implicate the sovereign-immunity doctrine. *Id.* In the second, private parties may attempt to sue the State for a declaratory judgment seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities. *Id.* at 855–56. These types of suits are considered suits against the State because they seek to control state action or impose liability on the State. *Id.* Consequently, these actions may not be maintained without express legislative permission. *Id.* at 856.

It is the second type of declaratory action under which Slade's claims fall. Slade asks this Court to compel performance by the Board based on her employment contract. Specifically, she seeks a declaration that she is entitled to an opportunity to appear before the Board in a public hearing prior to her termination being made final. This action would clearly be declaratory relief to enforce performance under a contract with the State. *See IT–Davy*, 74 S.W.3d at 855–56. Consequently, it is barred by the State's immunity and cannot

---

**2.** Because we hold that no waiver-by-conduct exception exists in this case, we express no opinion of the merits of Slade's breach-of-

conduct claim or the conduct of any person involved in the underlying dispute.

be maintained absent express legislative consent. *Id.*

Finally, Slade argues that the trial court erred in granting the Board's plea to the jurisdiction because of mootness. In light of our holding that the Board is immune from Slade's suit, it is unnecessary to reach the mootness question.

We affirm the trial court's order granting the Board's plea to the jurisdiction.