# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00626-CV

**Jonah Water Special Utility District, Appellant**

**v.**

**Aaron Keith White and Lance White, Appellees**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 02-647-C368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jonah Water Special Utility District ("Jonah"), appellant, provided water services to Aaron Keith ("Keith") White and Lance White (collectively, "the Whites"), appellees. Related disputes arose, and the Whites sued to recover for breach of Keith White's service contract and damage to their property. They also sought a declaration that Jonah's easement on their property was invalid and an injunction prohibiting Jonah from entering their property. Upon a jury verdict favorable to the Whites, the district court awarded the Whites $9,848.68 on their contract claim, $4,000 on their negligence claim, and $71,000 in attorney's fees. The court held as a matter of law, however, that Jonah's easement was valid and an injunction was unavailable. Jonah appeals the monetary awards, arguing that the contract claim was barred by governmental immunity, the negligence claim was not supported by legally sufficient evidence, and the award of attorney's fees was inequitable and unjust. We will reverse the trial court's judgment as to the contract claim and the award of attorney's fees, and we will affirm it as to the negligence claim.

**FACTUAL AND PROCEDURAL BACKGROUND**

The land at issue is an eighty-acre tract in rural Williamson County that has been in the Whites' family for at least three generations. In 1974, the Whites' grandparents contracted with Jonah Water Corporation for water service on the land. They granted the Corporation an easement on the property to facilitate service.

In 1988, appellee Keith White obtained title and moved onto the land. He entered into his own service agreement with Jonah Water Corporation. Among other things, the agreement required him to pay a $2,500 membership fee. In 1992, Jonah Water Corporation dissolved and reformed as Jonah Water Special Utility District, making it a governmental rather than private entity. This reformation had no immediate practical impact on Mr. White's service agreement; until 2002, Mr. White and Jonah proceeded under the terms of the 1988 service agreement. In 1995, Mr. White's brother, Lance White, moved into a second house on the property and also began receiving services from Jonah.

In January 2002, a dispute arose regarding Keith White's payment of bills. This dispute eventually led to Jonah's disconnecting Keith White's water, removing his water meter, and relocating Lance White's water meter. In removing and relocating the meters, Jonah damaged the Whites' property, and the Whites spent roughly $8,000 preparing a well to serve as a replacement water source for Keith White. Jonah also damaged the Whites' property on other occasions while attempting to repair underground water pipes.

Though Keith White tried repeatedly to settle his payment dispute with Jonah, Jonah refused to reconnect his water or refund his $2,500 membership fee. The Whites eventually sued.

2

They sought to recover Keith White's membership fee and the costs of preparing the well, characterizing both as contractual damages arising from Jonah's breach of Keith White's service agreement. The Whites also sought to recover for the property damage Jonah caused. In addition, the Whites sought a declaration that Jonah's easement was invalid and an injunction prohibiting Jonah from further entering their property.[1]  Finally, the Whites sought attorney's fees on their contract and declaratory judgment causes of action. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001(8) (authorizing award of attorney's fees in certain contract actions), 37.009 (authorizing award of attorney's fees in declaratory relief actions) (West 2008).

After a five-day trial, a jury found for the Whites on their contract and negligence claims and found that the Whites reasonably incurred $71,000 in attorney's fees. The trial court refused to submit a jury question on the Whites' declaratory relief claim. Instead, the court concluded as a matter of law that Jonah's easement was valid (which obviated the requested injunction). In its final judgment, the court awarded the Whites the contract damages, negligence damages, and attorney's fees calculated by the jury.

Jonah appeals the contract, negligence, and attorney's fees awards. It argues that the contract award was barred because Jonah was protected by governmental immunity from such claims. It also argues that the Whites' negligence evidence was legally insufficient because the Whites did not provide expert testimony to show the proper standard of care. Finally, it argues that

_____

[1] The Whites argued that the easement was invalid because it did not adequately describe their property; while the easement purported to burden the Whites' land as it was described on a particular page of Williamson County's deed records, the Whites' land was actually described on a different page of the records. The page referred to in the easement is actually a trust document executed by someone wholly unrelated to this dispute.

3

awarding attorney's fees was inequitable because the Whites did not prevail on their declaratory relief claim and should not have prevailed on their contract claim.

## STANDARD OF REVIEW

We review de novo questions of governmental immunity. *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). We review de novo "a trial court's determination regarding whether expert testimony is necessary to prove a negligence claim." *FFE Transp Serv., Inc. v. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004). We review for abuse of discretion a trial court's award of attorney's fees. *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004). "The trial court abuses its discretion if its ruling that attorney's fees were recoverable was arbitrary or unreasonable." *Cadle Co. v. Harvey*, 46 S.W.3d 282, 288 (Tex. App.—Fort Worth 2001, pet. denied).

## DISCUSSION

### *The Whites' Contract Claim*

A trial court has subject matter jurisdiction over claims against a governmental entity only if the entity's immunity from suit has been waived. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). Waiver of governmental immunity must be clear and unambiguous. *Tooke v. City of Mexia*, 197 S.W.3d 325, 333 (Tex. 2006). Jonah argues that because its immunity has not been clearly and unambiguously waived for contract claims like the one at issue, the trial court lacked subject matter jurisdiction over the Whites' contract claim. We agree.

4

Jonah is a general law district created under article XVI, section 59 of the Texas Constitution. As a result, it qualifies as a political subdivision of the State of Texas, *Willacy County Water Control & Improvement Dist. No. 1 v. Abendroth*, 177 S.W.2d 936, 937 (Tex. 1944), and enjoys governmental immunity from suit absent express waiver, *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). It is also subject to section 49 of the Texas Water Code. *See* Tex. Water Code Ann. § 49.002(a) (West 2008).

The Whites argue here, as they did below, that section 49.066(a) of the Water Code expressly waives Jonah's immunity from suit. Section 49.066(a) states: "A district may sue and be sued in the courts of this state in the name of the district by and through its board." The Texas Supreme Court has recently held, however, that "sue or be sued" language does not necessarily constitute a waiver of immunity. *See Tooke*, 197 S.W.3d at 342. Every court to interpret section 49.066(a) in light of *Tooke* has concluded that section 49.066(a) does not waive governmental immunity. *See Boyer, Inc. v. Trinity River Auth. of Texas*, 279 S.W.3d 354, 358 (Tex. App.—Fort Worth 2008, pet. filed); *Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.*, 256 S.W.3d 735, 745 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd); *Bexar Metro. Water Dist. v. Educ. and Econ. Dev. Joint Venture*, 220 S.W.3d 25, 32 (Tex. App.—San Antonio 2006, pet. dism'd); *Valley Mun. Util. Dist. No. 2 v. Rancho Viejo, Inc.*, No. 13-07-545-CV, 2008 Tex. App. LEXIS 1109, at *11 (Tex. App.—Corpus Christi Feb. 14, 2008, no pet.) (mem. op.). We agree with our sister courts and hold that section 49.066(a) does not waive Jonah's immunity from suit. Instead, it merely indicates that Jonah may be a party to litigation in Texas courts if its

immunity is otherwise waived. *See Clear Lake Water Auth.*, 256 S.W.3d at 743-44 (citing, inter alia, *Tooke*, 197 S.W.3d at 344).

The Whites argue that even if section 49.066(a) does not waive Jonah's immunity, Local Government code section 271.152 does. Section 271.152 states:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152 (West 2006). The relevant subchapter applies, however, only to contracts "for providing goods or services *to* the local governmental entity." *Id*. § 271.151(2) (emphasis added). The contract at issue here concerns the provision of services *by* a local government entity, Jonah, *to* a member of the public; thus, section 271.152 does not waive Jonah's immunity. *See BenBolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Property/Casualty Join Self-Ins. Fund*, 212 S.W.3d 320, 329-30 (Tex. 2006) (Willet, J., dissenting) (emphasizing section 271.152's requirement that contract provide goods or services *to* governmental entity for waiver). *Accord Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 217 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (finding no waiver of immunity under section 271.152 where contract does not concern provision of goods or services to governmental entity). *Cf. Ben Bolt*, 212 S.W.3d at 328 (finding waiver of immunity under section 271.152 because contract concerns provision of services to governmental entity); *City of Alton v. Sharyland Water Supply Corp.*, 277 S.W.3d 132, 144 (Tex. App.—Corpus Christi 2009, pet. filed) (same).

6

The Whites next argue that even if Jonah's immunity was not waived by statute, it was waived by Jonah's conduct. The Texas Supreme Court initially hinted that a governmental entity might waive its immunity by conduct in certain circumstances, *see Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 n.1 (Tex. 1997), but more recent cases have found contract disputes not to qualify. *See, e.g.*, *IT-Davy*, 74 S.W.3d at 857 ("Because we have consistently held that only the Legislature can waive sovereign immunity from suit, allowing other governmental entities to waive immunity by conduct that includes accepting benefits under a contract would be fundamentally inconsistent with our established jurisprudence and with the existing legislative scheme.").

We have found only one post-*IT-Davy* opinion holding that a governmental entity waived its immunity by conduct: *Texas Southern University v. State Street Bank and Trust Company*, 212 S.W.3d 893, 908 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The Whites rely heavily on *State Street*, but, as they admit, that case involved "extraordinary factual circumstances." *Id*. at 907. In fact, the *State Street* court itself noted that "[t]he Texas Supreme Court has never addressed a waiver-by-conduct exception argument faced with the 'extraordinary factual circumstances' as the trial court described them here." *Id*. In *State Street*, government officials induced the plaintiff to enter a contract and then refused to make payments under it, claiming that the contract was invalid. *Id*. at 908. Here, in contrast, the record does not indicate that Jonah procured a contract with promises it intended to break. While Jonah's conduct may have been less then exemplary in some regards, it was not sufficiently egregious vis-à-vis the contract to warrant a break with Texas Supreme Court precedent. Unlike the governmental entity in

*State Street*, Jonah performed under the contract for many years, and this lawsuit appears to have grown out of what was initially a good-faith disagreement over Keith White's performance under the contract. We therefore hold that Jonah did not waive its governmental immunity by conduct. *Cf. IT-Davy*, 74 S.W.3d at 861 (Hecht, J., concurring) (no waiver by conduct in an "ordinary contract dispute"); *Slade v. Texas S. Univ. Bd. Of Regents*, 232 S.W.3d 395, 400 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (distinguishing *State Street*, and finding no waiver by conduct, where defendant admitted contract was valid and did not attempt to avoid enforcement of settlement claim).

Finally, the Whites argue that Jonah should be estopped from asserting governmental immunity. This argument also fails. While a governmental entity may be estopped from taking certain actions, *see, e.g., City of Corpus Christi v. Gregg*, 289 S.W.2d 746, 752 (Tex. 1956) (city estopped from cancelling lease), we have found no case in which a governmental entity was estopped from asserting immunity. Such a result would vitiate entrenched judicial policies. *See Tooke*, 197 S.W.3d at 332 (courts "defer to the Legislature to waive immunity from contract claims"); *Tourneau Houston, Inc. v. Harris County Appraisal Dist.*, 24 S.W.3d 907, 910 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("No one is ever estopped from asserting lack of subject-matter jurisdiction."). The San Antonio Court of Appeals has suggested that estoppel-based waiver of immunity might be possible, *see Bexar Metro. Water Dist.*, 220 S.W.3d at 32, but a single hypothetical reference by one of our sister courts does not outweigh the considerable authority to the contrary.[2]

---

[2] We note that the *Bexar Metropolitan Water District* court based its suggestion on cases that did not involve immunity. *See Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture*, 220 S.W.3d 25, 32 (Tex. App.—San Antonio 2006, pet. dism'd) (citing *City of Hutchins v. Prasifka*,

8

In sum, the trial court had no statutory or equitable basis to conclude that Jonah waived immunity from suit on the contract at issue. Thus, the court should have dismissed the Whites' contract claim for lack of subject-matter jurisdiction. We sustain Jonah's first point of error.

### The Whites' Negligence Claim

Jonah next argues that the Whites' negligence claim was not supported by legally sufficient evidence because no expert witness testified on the standard of care governing Jonah's on-site activities. "'Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman.'" *Fulgham*, 154 S.W.3d at 90 (quoting *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982)). In making this determination, "Texas courts have considered whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person." *Id*. at 91. Where expert testimony is found necessary, failure to produce such testimony bars recovery. *See Hager v. Romines*, 913 S.W.2d 733, 735-36 (Tex. App.—Fort Worth 1995, no pet.) (rendering take-nothing judgment against plaintiffs who failed to produce necessary expert testimony on applicable standard of care). Here, the trial court impliedly concluded that expert testimony was not necessary, but that is a question of law that we review de novo. *Fulgham*, 154 S.W.3d at 89-90.

In the present case, the Whites pleaded the "alleged negligence" of Jonah's employees in exceedingly general terms:

---

450 S.W.2d 829, 836 (Tex. 1970), and *Gregg*, 289 S.W.2d at 751). We also note that the San Antonio court refused to find estoppel on the facts before it. *See id*.

On April 30, 2002, Plaintiffs suffered property damage when Defendant Jonah removed its water meter from Plaintiffs' property and left the area surrounding the former location of the water meter and other areas within the easement in a serious state of disrepair. At the time of the accident, unknown employees of Defendant Jonah were operating defendant's backhoe, bulldozer or other related earth moving and excavation equipment negligently. . . . [The unknown employees] had a duty to exercise ordinary care and operate the bulldozer and related equipment reasonably and prudently. Defendant breached that duty when it negligently caused damages to Plaintiffs' property in the course of removal of its water meter.

On or about August 22, 2003, Defendant Jonah caused additional damage to Plaintiffs' real property while Jonah was attempting to repair a water main break in its pipeline.

At trial, the Whites presented evidence that Jonah performed many different activities negligently. Under the Tort Claims Act, however, a party can recover for governmentally caused property damage only if the damage "arises from the operation or use of a motor-driven vehicle or motor-driven equipment." Tex. Civ. Prac. & Rem. Code § 101.021(1)(A) (West 2005). The motor-driven equipment must directly cause the damage for it to be compensable. *Dallas Area Rapid Transit v. Whitley*, 103 S.W.3d 540, 543 (Tex. 2003). At trial, the Whites testified regarding several kinds of damage that potentially satisfy this requirement, including (1) erosion, uneven surfaces, and soil infertility caused by backhoe excavation, and (2) ruts caused by backhoes moving across their property.

A backhoe is indisputably "specialized equipment," and certain aspects of operating a backhoe undoubtedly involve "techniques unfamiliar to the ordinary person." *Fulgham*, 154 S.W.3d at 91. Even when specialized equipment and techniques are involved, however, expert testimony is unnecessary if lay jurors can, as a matter of common sense, analyze the specific conduct alleged to have been negligent. *See Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 894

10

(Tex. App.—Texarkana 2004, pet. denied) (expert testimony not necessary to establish negligence if "general experience and common sense" allow jurors to conduct fair analysis). Indeed, even within the highly specialized area of medicine, expert testimony is not required where "the mode or form of treatment is a matter of common knowledge or is within the experience of the layman." *Hood v. Phillips*, 554 S.W.2d 160, 165-66 (Tex. 1977).

Here, the Whites' allegations of negligence were sufficiently general and indefinite that they do not show that Jonah's "'alleged negligence is of such a nature as not to be within the experience of the layman.'" *Fulgham*, 154 S.W.3d at 90 (quoting *Roark*, 633 S.W.2d at 809). Put another way, the Whites' pleadings alleged that Jonah was negligent but did not clearly show that Jonah was negligent in a way that necessitated expert testimony. Jonah did not file special exceptions seeking to require the Whites to plead more specifically.

At trial, the Whites testified that Jonah employees began excavating to access a leaky pipe and then had to move their backhoe upon realizing they initially dug in the wrong place. Having to reposition a backhoe and dig multiple holes would seem to suggest some sort of negligence, but it does not necessarily suggest the kind of negligence that is outside the experience of laypersons. A similar analysis would apply to Jonah's other allegedly negligent actions. For example, the Whites testified that Jonah caused property damage by excavating in areas that were highly erodible. Excavating in areas that are highly erodible could suggest some sort of negligence, but it does not necessarily suggest the kind of negligence that requires expert testimony. Thus, it appears that the Whites did not complain of an incorrect technical operation of the backhoe itself, but instead complained of more general actions such as not knowing where to dig.

11

Nor is it clear from the record what sort of negligence the jury found to have been committed by Jonah's employees. The jury question pertaining to negligence, like the Whites' pleadings and evidence of negligence, was general and nonspecific: "Did the negligence, if any, of Jonah Water S.U.D. proximately cause the occurrence or injury in question?" To prevail on appeal, therefore, Jonah must show that the negligence issue should not have gone to the jury in the first place. *See Hager*, 913 S.W.2d at 735-36 (rendering judgment for appellant where trial court should not have submitted negligence claim to jury). Jonah tries to make this showing only by arguing that the Whites failed to offer necessary expert testimony. This argument could succeed if Jonah's alleged negligence were demonstrably "of such a nature as not to be within the experience of the layman," but, as discussed above, the record does not establish as much. *Fulgham*, 154 S.W.3d at 90.

As the appellant, Jonah bore the burden of showing that the trial court committed error that probably resulted in an improper judgment. *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex. 1968) ("The burden is upon a party appealing from a trial court judgment to show that the judgment is erroneous in order to obtain a reversal."). Here Jonah did not satisfy that burden because it did not show that the "alleged negligence" of which the Whites complained was of such a nature as not to be within the experience of laypersons. We overrule Jonah's second point of error.

### *Attorney's Fees*

Finally, Jonah argues that the trial court abused its discretion by awarding the Whites attorney's fees. The Whites sought attorney's fees under two separate statutes: Civil Practice and Remedies Code section 38.001(8), which permits the award of attorney's fees for contract claims,

12

and Civil Practice and Remedies Code section 37.009, which permits the award of "equitable and just" attorney's fees in declaratory relief actions.

As discussed above, Jonah was governmentally immune from the Whites' contract claim. That claim was therefore not a proper basis for awarding attorney's fees. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (party must prevail on contract claim to recover attorney's fees under chapter 38). In addition, the trial court denied the Whites declaratory relief as a matter of law.[3] This suggests that the Whites' declaratory relief claim was not a proper basis for awarding attorney's fees either. *See Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 143 (Tex. App.—Waco 2005, pet denied) (reversing attorney's fees award because declaratory relief was unwarranted); *Hartford Fire Ins. Co. v. Rainbow Drilling Co.*, 748 S.W.2d 262, 267 (Tex. App.—Houston [14th Dist.] 1988, no writ) ("where a trial court denies declaratory relief . . . , it is an abuse of discretion to award attorney's fees to a party that is not entitled to any relief."). We therefore reverse the trial court's attorney's fees award.

## CONCLUSION

The Whites' contract claim was barred by governmental immunity, but we cannot conclude on the record before us that the Whites' negligence claim failed for lack of expert testimony. We therefore reverse the trial court's judgment as to the Whites' contract claim and

---

[3] The Whites argue in their appellate brief that this ruling was an abuse of discretion. Because the Whites did not appeal this ruling, however, we disregard their argument. *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment . . . must file a notice of appeal."); *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 584 (Tex. 2002) (appellee waived challenge to judgment by failing to file notice of appeal).

render judgment that the Whites take nothing on that claim. On the Whites' negligence claim, we affirm the trial court's judgment. We reverse the trial court's award of attorney's fees and render judgment that the Whites take nothing on that claim.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson;
   Dissenting Opinion by Justice Puryear

Affirmed in Part; Reversed and Rendered in Part

Filed:   August 31, 2009