Affirmed and Opinion filed September 17, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-01064-CV

____________

 

MBP CORP., Appellant

 

v.

 

BOARD OF TRUSTEES OF THE GALVESTON WHARVES and THE
GALVESTON PORT FACILITIES CORPORATION, Appellees

 



 

On Appeal from the
212th District Court

Galveston County,
Texas

Trial Court Cause
No. 07CV0618

 



 

O P I N I
O N








Appellant, MBP Corp., sued two governmental entities for
breach of a lease agreement and inverse condemnation.  The trial court
dismissed the suit, ruling that the defendants were immune from suit.  Appellant
challenges the dismissal, raising two issues.  First, MBP contends governmental
immunity does not bar its constitutional-takings claim against the appellees,
the Board of Trustees of the Galveston Wharves and the Galveston Port
Facilities Corporation (collectively, the AWharves@).  Second, appellant contends the
Wharves waived immunity through egregious conduct.  We affirm the dismissal.

                                                                             I.

                                                               Background

In 1990, the Wharves agreed to lease the rooftop and aerial
rights of the Mallory Building, more commonly known as the Galveston Cruise
Ship Terminal (the ATerminal@), to MBP=s predecessor-in-interest, Woodlands Corp.  In 1994,
Woodlands transferred its leasehold rights to MBP.  

Over the next ten years, MBP and the Wharves agreed to
several amendments of the original lease agreement.  In 1999, the parties
executed an amendment that permitted the Wharves to construct several
improvements on the Terminal rooftop, including an enclosed pedestrian
walkway.  Through another amendment signed in 2003, the Wharves expanded
several rooftop improvements and modified the pedestrian walkway.








This case arises from the Wharves= decision, allegedly in breach of the
lease agreement, to further expand the pedestrian walkway in 2007.  As a result
of Hurricane Katrina, which caused damage to ports throughout the Gulf Coast,
several significant cruise lines altered their routes to make use of the port
of Galveston.  To accommodate a corresponding increase in passenger traffic,
the Wharves opted to build additional air conditioning units in the Terminal
and expand the rooftop=s pedestrian walkway into a larger disembarkation ramp.  They
approached MBP with a proposal to amend the lease to expressly provide for the
additional construction, but the parties could not reach agreement on the terms
of the amendment.[1] 
Nevertheless, the Wharves built the desired improvements anyway, contending
that Section 1.02 of the lease agreement, as amended in 1999, already gave them
permission to Aconstruct and maintain air conditioning equipment . . . and an enclosed
pedestrian walkway.@

MBP disagreed with the Wharves= contract interpretation and sued
them for breach of contract, requesting the following relief: (1) an injunction
requiring the Wharves to remove the latest installations and restore the
rooftop to its previous condition; (2) an injunction preventing the Wharves
from further altering the rooftop; and (3) attorneys= fees.[2] 
The Wharves asserted immunity and moved to dismiss the suit for lack of
subject-matter jurisdiction.  In response, MBP filed a supplemental petition
alleging a constitutional-takings claim:

Article 1[] ' 17 of the Texas Constitution prohibits the taking or damaging of a
person=s property by a governmental entity for public use
without adequate compensation to the owner of the property.  Plaintiff is the
owner of a leasehold interest in the rooftop of the Mallory Building and the
aerial space above it.  Defendants have taken or damaged such property without
initiating a condemnation proceeding and without adequate compensation to
Plaintiff.  Plaintiff is entitled to injunctive relief to prohibit such activity
and to restore the rooftop to its state prior to the unauthorized actions of
Defendants.

 

Notably, MBP did not seek Aadequate compensation@ for the alleged taking, but instead
continued to pursue only injunctive relief and attorneys= fees.








The trial court ruled that the Wharves were immune from suit,
and dismissed MBP=s claims for lack of subject-matter jurisdiction.  MBP has
appealed the dismissal, raising two issues.  First, MBP contends its pleadings
raise a constitutional-takings claim against which the Wharves have no
immunity.  Second, MBP argues the Wharves= behavior is sufficiently egregious
to justify the application of the Awaiver by conduct@ exception theorized in Federal
Sign v. Texas Southern University, 951 S.W.2d 401, 408 n.1 (Tex. 1997).

                                                                            II.

                                                                    Analysis

Under the doctrine of governmental immunity,[3]
political subdivisions of the State are protected from lawsuits for damages,
absent a waiver of immunity or legislative consent to sue.  See Lake Charles
Harbor & Terminal Dist. v. Bd. of Trs. of the Galveston Wharves, 62
S.W.3d 237, 245B46 (Tex. App.CHouston [14th Dist.] 2001, pet. denied).  Here, the parties
agree that both defendants, the Board of Trustees of the Galveston Wharves and
the Galveston Port Facilities Corporation, qualify as governmental entities.[4]

A governmental entity=s immunity encompasses both immunity
from liability and immunity from suit.  See Tooke v. City of Mexia, 197
S.W.3d 325, 332 (Tex. 2006).  Although the act of voluntarily entering into a
contract may waive a governmental entity=s immunity from liability, it does
not necessarily waive the entity=s immunity from suit.  See id. 
Thus, unless the Legislature explicitly waives immunity, governmental entities
generally enjoy immunity from suit.  See id.








A.        Standard
of Review

If a political subdivision of the State is entitled to
immunity from the plaintiff=s claims, the trial court lacks subject-matter jurisdiction
to consider the suit.  See Clear Lake City Water Auth. v. Friendswood Dev.
Co., 256 S.W.3d 735, 740 (Tex. App.CHouston [14th Dist.] 2008, pet. dism=d).  We review a trial court=s subject-matter jurisdiction, which
is a question of law, using the de novo standard of review.  See Tex.
Dep=t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  A
defendant may challenge the court=s subject-matter jurisdiction by
filing a plea to the jurisdiction.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000).  In its plea, the defendant may challenge either
the plaintiff=s pleadings or the existence of jurisdictional facts.  See Miranda,
133 S.W.3d at 226B27.

The plaintiff bears the burden of alleging facts that
affirmatively demonstrate the trial court=s subject-matter jurisdiction over a
case.  See Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). 
When a plea is directed at the plaintiff=s pleadings, we are to determine
whether the plaintiff has alleged facts demonstrating the trial court=s jurisdiction to entertain the
case.  Miranda, 133 S.W.3d at 226.  In that event, we construe the
pleadings liberally in the plaintiff=s favor and do not decide the merits
of the case.  Id.; Bland, 34 S.W.3d at 554.  If the pleadings
neither establish jurisdiction nor demonstrate incurable defects in
jurisdiction, we must permit the plaintiff an opportunity to amend its
pleadings.  See Miranda, 133 S.W.3d at 226B27.  By contrast, if the pleadings
affirmatively negate jurisdiction, the trial court may grant a plea to the
jurisdiction without allowing the plaintiff to amend.  County of Cameron v.
Brown, 80 S.W.3d 549, 555 (Tex. 2002).








When, as here, the defendant=s plea challenges the existence of
jurisdictional facts,[5] we consider
the relevant evidence submitted by the parties to the extent necessary to
resolve the jurisdictional questions raised.  See Miranda, 133 S.W.3d at
227.  In this scenario, we will assume as true all evidence that favors the
nonmovant.  See id. at 228.  A trial court properly grants a plea to the
jurisdiction when the relevant evidence is undisputed or fails to raise a fact
question as to jurisdiction.  See id.  However, if the evidence reveals
a fact question on the jurisdictional issue, we will remand the dispute to be
resolved by the fact-finder.  See id. at 227B28.

B.        Alleged
Takings Claim

In its first issue, MBP contends the Wharves= governmental immunity does not extend
to MBP=s constitutional-takings claim.  The
Wharves respond that their immunity remains intact because they lacked the
requisite intent to take property using sovereign powers, and instead expanded
the disembarkation ramp solely under a Acolor of right@ pursuant to the lease agreement.  See
Gen. Servs. Comm=n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598B99 (Tex. 2001).  We agree with the
Wharves.








The Texas Constitution provides a limited waiver of the
government=s immunity when property is taken, damaged, or destroyed for public use
without adequate compensation.  See Tex. Const. art. I, ' 17; Steele v. City of Houston,
603 S.W.2d 786, 791 (Tex. 1980); Green Int=l, Inc. v. State, 877 S.W.2d 428, 433 (Tex. App.CAustin 1994, writ dism=d).  In other words, immunity does
not protect a governmental entity from a plaintiff=s constitutional-takings claim.  See
State v. Holland, 221 S.W.3d 639, 643 (Tex. 2007).  Whether the government=s actions in a particular case are
sufficient to constitute a Ataking@ is a question of law.  Little-Tex, 39 S.W.3d at 598. 
To prove a constitutional-takings claim, a plaintiff must demonstrate that (1)
the government intentionally performed certain acts (2) that resulted in a Ataking@ of property (3) for public use.  See
id.  When a contract is involved, as here, the plaintiff must also show
that the government intended to act using its sovereign powers,[6]
as opposed to an intent to withhold performance, money, or property in a
contract dispute.  See id. at 598B99.  As the Texas Supreme Court
explained in Little-Tex:

[T]he State does not have the requisite intent under
constitutional-takings jurisprudence when it withholds property or money from
an entity in a contract dispute.  Rather the State is acting within a color of
right under the contract and not under its eminent domain powers. . . .

Texas courts have long recognized that the
State wears two hats:  the State as a party to the contract and the State as
sovereign.  The State, in acting within a color of right to take or withhold
property in a contractual situation, is acting akin to a private citizen and
not under any sovereign powers.  In this situation, the State does not have the
intent to take under its eminent domain powers; the State only has an intent to
act within the scope of the contract.

 

Id. (citations
omitted); see Holland, 221 S.W.3d at 643 (AWhen the government acts pursuant to
colorable contract rights, it lacks the necessary intent to take under its
eminent-domain powers and thus retains its immunity from suit.@).








Here, the parties disagree about the application of these
principles to the Wharves= conduct.  The Wharves contend their intent was merely to act
pursuant to the lease agreement because their duty to perform arose solely
from contract.  See Tex. Parks & Wildlife Dep=t v. Callaway, 971 S.W.2d 145, 150 (Tex. App.CAustin 1998, no pet.).  In response,
MBP claims that the Wharves= actions were outside the contract and therefore could
not have been motivated by an intent to act under the contract.

In resolving this dispute, we note that the phrase Acolor of right under the contract@ has not received a comprehensive
definition in this immunity context.  However, case law may provide guidance as
to some of the boundaries of this doctrine.  For example, the mere existence of
a contract between the government and a private party does not necessarily
confer immunity on the entity for all interactions between those parties:  AThe existence of a contract is not
talismanic, but merely leaves the state=s immunity from suit intact; it does
not build an impenetrable wall nullifying the possibility of other waivers of
and exceptions to that immunity.@  Id.; see also Little-Tex,
39 S.W.3d at 601 (Abbott, J., concurring) (A[M]ore than the mere existence of a
contract is required to overcome a taking claim[.]@).  Similarly, the government=s statement of its subjective intent
to act under a contract, by itself, may be insufficient to support a claim of
immunity.  See Koch v. Tex. Gen. Land Office, 273 S.W.3d 451, 458B59 (Tex. App.CAustin 2008, pet. filed) (rejecting
State=s attempt to extend Little-Tex
to land-ownership disputes simply because Ait >believes= it is acting as landowner rather
than as sovereign@).








On the opposite end of the spectrum, the government may lack
the requisite intent to take under its sovereign powers even if no contract
exists or the government=s interpretation of the contract is wrong.  See Holland,
221 S.W.3d at 643 (A[A]bsence of an express contract between Holland and the State,
or uncertainties about the existence of an implied contract between them, are
immaterial to determining the capacity in which the State is acting.@); Green Int=l, 877 S.W.2d at 434B35 (A[T]he State, while perhaps wrong
about its interpretation of contractual obligations, has acted within its color
of right under the contract.@); Brownsville Pub. Utils. Bd. v. Coatings, Inc., No.
13-07-00530-CV, 2009 WL 937178, at *4 (Tex. App.CCorpus Christi Mar. 19, 2009, no
pet.) (mem. op.) (upholding immunity despite plaintiff=s claim that government=s action was Aoutside the contract@).  Some cases have superimposed a
good-faith inquiry onto the government=s belief that its actions were
justified by the contract.  See TRST Corpus, Inc. v. Fin. Ctr., Inc., 9
S.W.3d 316, 323 n.4 (Tex. App.CHouston [14th Dist.] 1999, pet. denied);  Green Int=l, 877 S.W.2d at 434; N.C. Sturgeon, L.P. v. Sul
Ross State Univ., No. 03-01-00716-CV, 2003 WL 124208, at *2 (Tex. App.CAustin Jan. 16, 2003, pet. denied)
(mem. op.); see also Little-Tex, 39 S.W.3d at 601 (Abbott, J.,
concurring) (A[C]ourts must determine whether the State is acting in good faith
pursuant to its bargained-for contractual rights.@).

This court, in an alleged Acolor of right@ case decided last year, examined
whether the government acted akin to a private party or, conversely,
whether its actions necessitated the use of sovereign powers:

The easement language gave Harris County the right to
take actions that Ado not unreasonably impair [SWBT=s] use of the easement.@  Under the auspices of this language, Harris County required SWBT to
relocate a manhole vault, conduits, cables, and telecommunications facilities
within the easement, relocate some facilities entirely outside the easement,
and lower remaining lines that are located in the new right-of-way several
feet, thereby causing SWBT to incur at least $200,000 in damages.  Although
Harris County asserts that their actions do not constitute a taking, a
private landowner would not be able to force SWBT to relocate its
equipment, give up a portion of its easement to public right-of-way, and incur
up to $200,000 in damages based on the Aunreasonably
impair@ language in the easement.  Only a government
entity with condemning powers could force a private utility company to
relocate equipment and relinquish part of its easement to public right-of-way,
and under Texas case law, these actions constitute a taking.

 








Sw. Bell Tel., L.P. v. Harris County, 267 S.W.3d 490, 496B97 (Tex. App.CHouston [14th Dist.] 2008, no pet.)
(emphases added) (citing Houston Lighting & Power Co. v. State, 925
S.W.2d 312, 315 (Tex. App.CHouston [14th Dist.] 1996, writ denied)).  This analysis is
consistent with the holdings in Holland and Little-Tex, which
inquire whether the government acted Aakin to a private citizen.@  See Holland, 221 S.W.3d at
643 (quoting Little-Tex, 39 S.W.3d at 599).  The Dallas Court of Appeals
recently employed a similar analysis: A[T]he District was acting as any
private party could, and not a sovereign, in exercising its rights under
the lease, and its assertion of that right was not a taking.@  Dallas County Cmty. Coll. Dist.
v. Clear Channel Outdoor, Inc., No. 05-07-00701-CV, 2008 WL 3307085, at *3
(Tex. App.CDallas July 31, 2008, pet. filed) (mem. op.).

Applying these principles here, we hold that MBP has failed
to establish the Wharves= requisite intent to take property using its sovereign
powers.  We note that this case presents an unusual factual backdrop, at least
in the context of immunity cases, because the governmental entity already owns
the property it is alleged to have taken.  There is no question that, in the
absence of the lease agreement with MBP, the Wharves could have built a
disembarkation ramp on their own property without needing sovereign powers.[7] 
Cf. Sw. Bell Tel., 267 S.W.3d at 496B97 (rejecting claim of immunity
because eminent-powers were necessary to accomplish government=s land-use goals).  








In fact, MBP=s ability to limit the Wharves= property improvements, and the
Wharves= duties to consider MBP=s objections to any construction, are
strictly limited to whatever rights may be conferred by the parties= voluntary contract.  See Callaway,
971 S.W.2d at 150 (surveying cases in which government=s duty to perform arises solely from
contract); Green Int=l, 877 S.W.2d at 435 (A[T]here can be only limited
application of the takings theory when rights have been voluntarily created by
contract.@); City of Corpus Christi v. Acme Mech. Contractors, Inc., 736
S.W.2d 894, 903 (Tex. App.CCorpus Christi 1987, writ denied) (same).  Thus, at its
essence, this lawsuit is a dispute in which MBP contends its contractual
rights to the Terminal rooftop were negatively affected by the Wharves= physical improvements.  Accordingly,
because a private landowner could have acted as the Wharves did, we conclude
MBP has not shown the Wharves= requisite intent to act under its sovereign powers.  See
Little-Tex, 39 S.W.3d at 599; Sw. Bell Tel., 267 S.W.3d at 496B97.

Our determination that this is a contract dispute, and not a
valid takings claim, is also supported by the relief MBP seeks:  (1) an
injunction requiring the dismantling of the recent improvements, (2) an
injunction preventing further alterations to the rooftop, and (3) attorneys= fees under the lease agreement. 
These remedies may be available in a breach-of-contract suit but cannot be
recovered in a constitutional-takings claim.  See Scott v. Huntsville Indep.
Sch. Dist., 487 S.W.2d 692, 693 (Tex. 1972) (holding trial courts may not
enjoin government from exercising its article-1-section-17 condemnation
rights); City of San Antonio v. El Dorado Amusement Co., 195 S.W.3d 238,
249 (Tex. App.CSan Antonio 2006, pet. denied) (AArticle I, Section 17 of the Texas
Constitution . . . does not authorize attorney=s fees in a takings case.@).  Instead, the appropriate recovery
under a constitutional-takings claim is Aadequate compensation.@  Tex. Const. art. I, ' 17; see Motiva Enters., LLC v.
McCrabb, 248 S.W.3d 211, 215B16 (Tex. App.CHouston [1st Dist.] 2007, pet.
denied) (discussing compensation in takings claims).  However, MBP does not
seek Aadequate compensation,@ but instead advances an
inverse-condemnation case in an apparent effort to recover traditional contract
remedies. Generally, parties may not recover contract damages that are Aadvanced under the rubric of a
constitutional takings claim.@  State v. Operating Contractors, 985 S.W.2d 646, 651
(Tex. App.CAustin 1999, pet. denied) (citing Green Int=l, 877 S.W.2d at 433).








In addition, although we do not decide the merits of MBP=s breach-of-contract claims here,[8]
the Wharves have presented a colorable argument that the lease agreement, as
amended in 1999, actually permitted the 2007 enlargement of the pedestrian
walkway.  In 1999, the parties specifically amended Article I of the lease
agreement to include broad language in Section 1.02 authorizing the Wharves Ato use a portion of the roof of the
Mallory Building upon which to locate, construct and maintain air
conditioning equipment, elevator equipment, and an enclosed pedestrian walkway.@[9]  MBP does not disagree with the
Wharves= contention that the disembarkation
ramp is a Apedestrian walkway.@  Thus, under the Wharves= interpretation of the contract, its
decision to enlarge the pedestrian walkway  complied with Section 1.02.

MBP advances a different interpretation, arguing that,
because the Wharves= construction easement expired in 2000, the 1999 amendment
cannot reasonably be read as authorizing further construction in 2007.[10] 
However, the Wharves respond that (1) Section 1.02, which confers their
construction and maintenance rights, neither mentions the construction easement
nor suggests that the Wharves= rights are limited in time; (2) the construction easement
does not expressly limit the duration of the rights granted in Section 1.02;
and (3) the contract is silent as to the interaction between Section 1.02,
which seems to grant perpetual access rights to the Wharves, and the
construction easement, which may limit the Wharves= access to the rooftop.








We need not decide which party=s interpretation is correct to assess
the trial court=s subject-matter jurisdiction over the suit.  See Miranda,
133 S.W.3d at 226; Bland, 34 S.W.3d at 554.  Even if the Wharves= contract interpretation is
incorrect, as MBP suggests, that would not change the capacity in which the
government is acting.  See Holland, 221 S.W.3d at 643; Green Int=l, 877 S.W.2d at 434B35.  That is, we do not read Little-Tex
as holding that the government must be deemed to have taken property by way of
its sovereign authority whenever its interpretation of the contract turns out
to be wrong.  Otherwise, immunity would turn upon a court=s determination of the merits of the
plaintiff=s breach-of-contract claims.  See Miranda, 133 S.W.3d at 226; Bland,
34 S.W.3d at 554.  That approach would shift the burden from the plaintiff, who
must affirmatively demonstrate the trial court=s subject-matter jurisdiction, see
Tex. Ass=n of Bus., 852 S.W.2d at 446, to the government, which then could
defeat jurisdiction only by proving it did not breach the contract in dispute.

Here, MBP has not shown the Wharves= requisite intent to take property
using sovereign powers.  Therefore, the Wharves are not subject to liability
under article I, section 17 of the Texas Constitution.  See Holland, 221
S.W.3d at 644.

Accordingly, we overrule appellant=s first issue.

C.        Egregious-Conduct
Exception

In its second issue, MBP contends the Wharves have waived
their entitlement to governmental immunity through egregious conduct including
the Wharves= (1)  receiving benefits from the lease agreement, (2) affirming Athey would honor the leasehold@ by seeking MBP=s permission to construct
improvements, and then (3) breaching the contract.  Appellant=s argument presumes the existence of
a waiver-by-conduct exception, a question that is far from settled.








Both this court and the First Court of Appeals have
discussed, at length, the history of the waiver-by-conduct exception.  See
Seureau v. ExxonMobil Corp., 274 S.W.3d 206, 220B21 (Tex. App.CHouston [14th Dist.] 2008, no pet.); Tex.
S. Univ. v. State St. Bank & Trust Co., 212 S.W.3d 893, 905B07 (Tex. App.CHouston [1st Dist.] 2007, pet.
denied).  Briefly, it began as a footnote to the Texas Supreme Court=s majority opinion in Federal Sign
v. Texas Southern University, 951 S.W.2d 401, 408 n.1 (Tex. 1997).  

Over the next few years, several appellate courts interpreted
the footnote in Federal Sign as creating a new judicially-created Awaiver by conduct@ exception to immunity.  Seureau,
274 S.W.3d at 220.  However, as of 2002, the Court was divided as to its
continued existence.  See Tex. Natural Res. Conservation Comm=n v. IT-Davy, 74 S.W.3d 849, 857 (Tex. 2002)
(declining to fashion waiver-by-conduct exception) (plurality); but see id.
at 860B61 (Hecht, J., concurring) (refusing
to foreclose possibility of finding waiver by conduct under different
circumstances).  Since then, the First Court of Appeals has found waiver by
conduct under Aextraordinary factual circumstances@ in which the government lured the
plaintiff into the contract under A>false promises that the contract
would be valid and enforceable, then disclaimed any obligation on the contract
by taking the position that the contract was not valid after all.=@ State St., 212 S.W.3d at 908.

Even assuming such an exception exists, the facts presented
here do not warrant its extension to this ordinary contract dispute.  See
Seureau, 274 S.W.3d at 225; Slade v. Tex. S. Univ. Bd. of Regents,
232 S.W.3d 395, 400 (Tex. App.CHouston [1st Dist.] 2007, no pet.); IT-Davy, 74 S.W.3d
at 861 (Hecht, J., concurring).  Unlike the plaintiff in State Street,
MBP was not Alured@ into the lease agreement by false promises the Wharves never intended to
fulfill.  See Tara Partners, Ltd. v. City of S. Houston, 282 S.W.3d 564,
580 (Tex. App.CHouston [14th Dist.] 2009, pet. filed).  Nor does the record reflect that
the Wharves have Achiseled@ MBP or profited unfairly at its expense.  See Catalina
Dev., Inc. v. County of El Paso, 121 S.W.3d 704, 705 (Tex. 2003); IT-Davy,
74 S.W.3d at 861 (Hecht, J., concurring).








To the contrary, the record implies that, from 1990 until
2007, MBP and its predecessor enjoyed an amicable, mutually beneficial
relationship with the Wharves.  During that time, the Wharves received the
benefit of lease payments from MBP, and MBP enjoyed the privilege of using and
occupying the leased premises.  Unfortunately, after the parties were unable to
agree to the terms of an amended lease, that relationship deteriorated and MBP
sued the Wharves for breach of contract.  Even if those contract claims have
merit, Texas law is clear that a governmental entity does not necessarily waive
immunity from suit merely by accepting benefits under, and then breaching, a
contract.  See Tex. A&M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 840
(Tex. 2007); Little-Tex, 39 S.W.3d at 598B99; Seureau, 274 S.W.3d at 224
(A[F]inding waiver by conduct merely
because the plaintiff alleges that the governmental entity breached the
contract would render immunity useless by permitting the exception to swallow
the rule.@).

Therefore, because this case does not present the sort of Aextraordinary factual circumstances@ present in State Street, we
decline to find a waiver of the Wharves= governmental immunity here.  We
overrule appellant=s second issue.

                                                                CONCLUSION

Finding no merit in the issues presented, we affirm the
judgment of the trial court.

 

 

 

 

 

/s/      Kent
C. Sullivan

Justice

 

 

 

Panel
consists of Justices Guzman and Sullivan, and Senior Justice Hudson.*









           [1] 
To secure its approval of the proposed construction, MBP demanded, among other
things, a forty-two year extension of the lease, free use of some of the port
facilities, the reallocation of some port revenues from the Wharves to MBP, and
annual rent payments to MBP that were to start at $60,000 and then increase by
4% every year.  The Wharves apparently rejected these demands.





           [2] 
Initially, MBP also brought a trespass claim and a request for exemplary
damages.  Both claims were later dropped.





           [3] 
In this opinion, we will use the term Agovernmental
immunity,@ which extends to political subdivisions of the State
including cities, as opposed to Asovereign
immunity,@ which refers to the State=s immunity from suit and liability.  See Seureau v.
ExxonMobil Corp., 274 S.W.3d 206, 214 n.5 (Tex. App.CHouston [14th Dist.] 2008, no pet.).





           [4] 
The City of Galveston has authorized the Board of Trustees of the Galveston
Wharves to exercise management and control of the city=s wharf and terminal facilities.  See Lake Charles,
62 S.W.3d at 246 (AThe Wharves is thus a governmental unit, and as such
is protected by the doctrine of sovereign immunity.@).  Similarly, the Galveston Port Facilities
Corporation is a Alocal government corporation@ charged with assisting the Board of Trustees with its
governmental functions.  See Tex. Transp. Code Ann. ' 431.101(a) (Vernon 2007).  As such, the corporation
is a governmental unit and is entitled to immunity from suit, unless its
immunity is waived.  See id. '
431.108; Ray Ferguson Interests, Inc. v. Harris County Sports &
Convention Corp., 169 S.W.3d 18, 22 (Tex. App.CHouston [1st Dist.] 2004, no pet.).





           [5]  Initially, the
Wharves= plea focused solely on the sufficiency of MBP=s pleadings.  However, after MBP added a takings
claim, the Wharves amended the plea to challenge the existence of
jurisdictional facts under the evidence submitted to the trial court.

 





           [6] 
Although this case involves an allegation that the Wharves exercised eminent-domain
powers, a constitutional-takings claim may also encompass the government=s use of police power.  See City of Dallas
v. VSC, LLC, 242 S.W.3d 584, 593 (Tex. App.CDallas 2008, pet. filed) (AThe
proper interpretation of . . . Little-Tex Insulation Co. is the
government must intend to act under its sovereign powers, which include both
eminent domain and police power.@).





           [7] 
In fact, in one of their filings in the trial court, the Wharves contended they
could not have intended to use sovereign powers because Athey have no legal authority to condemn property.@  However, that argument is not well-developed in the
record and has not been advanced on appeal; therefore, we do not consider it.  See Tex.
R. App. P. 38.1(i).





           [8] 
See Miranda, 133 S.W.3d at 226; Bland, 34 S.W.3d at 554.





           [9] 
Emphases added.





           [10] 
MBP also contends a remand is necessary to resolve a fact issue as to whether
the Wharves exceeded the scope of the rights conferred by Section 1.02, citing
this court=s opinion in Ahmed v. Metropolitan Transit
Authority, 257 S.W.3d 29 (Tex. App.CHouston
[14th Dist.] 2008, no pet.).  However, Ahmed is distinguishable because,
unlike here, the governmental entity in Ahmed C Metro C admitted
its construction was only partially explainable by contractual easement
rights.  See id. at 32B33.  Thus, a
fact issue existed as to whether the portion of Metro=s drainage work that was not supported by easement
rights constituted a taking of Ahmed=s
property.  See id. at 33; see also Callaway, 971 S.W.2d at 149B51 (rejecting immunity claim by governmental entity
because plaintiff=s inverse-condemnation claim did not Arest on contractual grounds alone@).  Here, by contrast, the Wharves= duties to MBP arise exclusively from contract, and
MBP has not alleged a taking of any property not covered by the lease
agreement.





           *  Senior Justice J. Harvey Hudson
participating by assignment.